THE WINSLOW ELEVATOR AND MACHINE COMPANY *vs.* SARAH ELIZABETH HOFFMAN, J. LATIMER HOFFMAN, JR., ET AL.

*Damages for Breach of Contract—Loss of Rents from Failure to Erect Suitable Passenger Elevator in Office Building—Remote and Speculative Damages.*

In an action to recover damages for breach of defendant's contract to erect a passenger elevator of a designated character in plaintiff's office building, the plaintiff alleged that on account of the unsafe and defective construction of the elevator he lost large sums of money by the removal of tenants from the building on that account and by the failure to rent offices to others for the same reason. *Held*, that the loss of rents cannot be treated as part of the damages which the plaintiff is entitled to recover, since that loss was not such a probable result of the breach of the contract by the defendant as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract.

*Held*, further, that the mere knowledge by the defendant of the fact that the elevator was to be used in an office building does not indicate that the parties contemplated a loss of rents as an element of the damage likely to be caused by a breach so as to constitute to any extent a basis of the contract, and bring the case within the rule that where the special circumstances under which the contract is made are communicated to the other party, the damages resulting from the breach, under the circumstances, may be recovered.

*Held*, further, that even if the loss of rents was within the contemplation of the parties as a probable result of a breach of the contract, such loss is too remote, uncertain and conjectural in this case to be considered in estimating the damages.

When an established business has been unlawfully interfered with, the profits thereof may be considered in estimating the damages arising from such interruption, because such profits can be ascertained with reasonable certainty.

But when the business interfered with is a new venture, the profits that might have been made are too uncertain and speculative to constitute an element of the damages that may be recovered.

*Decided April 1st, 1908.*

Appeal from the Superior Court of Baltimore City (SHARP, J.)

*Plaintiff's 2nd Prayer.*—If the jury find for the plaintiffs, that they may consider in estimating the damages to which they may find the plaintiffs are entitled, the reasonable cost to the plaintiffs for installing an elevator of the kind to be furnished by the defendant, and the cost of the reasonable and necessary repairs expended by the plaintiffs on the elevator installed by the defendant in their efforts to make it operate (if the jury so find), together with the sum of money the jury may find was paid by the plaintiffs to the defendant on account of the elevator installed by the defendant (less the contract price of the elevator installed by the defendant, and sum of seventy dollars for extra work done by the defendant and the value of the old elevator as replaced by the new one, if they find it had any value), and the loss of rents to the plaintiffs (if the jury so find), by reason of tenants in the plaintiffs' building during such time as they may find said elevator was under fair and reasonable trial by the plaintiffs in said building, vacating the same solely and directly because of the insufficient service of the said elevator (if the jury so find) and the loss of rents to the plaintiffs (if the jury so find) by reason of reduction of rents by the plaintiffs during such time as they may find said elevator was under fair and reasonable trial by the plaintiffs in said building, occasioned solely and directly on account of the inefficient service of the elevator installed by the defendant (if the jury so find) and the loss of rents to the plaintiffs during such time as they find said elevator was under fair and reasonable trial by the plaintiffs in said building because of the refusal of persons to enter into contracts as tenants with the plaintiffs for offices in said building, occa-

sioned solely and directly by reason of the inefficient service of the elevator installed by the defendant in said building (if the jury so find).   (*Granted.*)

*Defendant's 4th Prayer.*—If the jury shall find from the evidence that the plaintiff and defendant made the contract dated September 29th, 1904, and offered in evidence, and that the defendant in pursuance of said contract erected an elevator in the plaintiff's premises, No. 11 East Lexington street, but that the said elevator as erected was defective in workmanship and material and did not comply with the contract and the defendant in or about the month of September, 1905, refused to make further efforts to remedy such defects as the jury shall find existed therein and that the plaintiff at that time and for a long time thereafter used the said elevator and still has possession thereof, and if the jury shall further find that the plaintiff could with reasonable exertion and expense have remedied the defects in the said elevator, so that it would conform to the terms of the said contract, and saved further loss it was his duty to do so within a reasonable time, and the defendant is liable only for such damages as were suffered by the plaintiff because of the breach of the said contract, which by reasonable endeavors and expense the plaintiff could not prevent up to that time.   (*Refused.*)

*Defendant's 5th Prayer.*—That if the jury shall find from the evidence that the plaintiff and defendant made the contract dated September 29th, 1904, for the construction of an elevator by the defendant in the office building of the plaintiff, No. 11 East Lexington street, and that the plans and drawings for the said elevator were approved by the plaintiff's agent and architect, and that the defendant built and installed the said elevator but not in exact accord therewith, and that the said elevator failed to give proper service while in charge of the plaintiff's agents and employees; and that the plaintiff permitted his agents to operate the said elevator in a careless and unskilled way, and did not properly house and care for the said elevator, and that the act of the plaintiff and defendant concurred in damaging the said elevator, and if the jury cannot

determine if the act of the plaintiff or defendant was the controlling cause thereof, or whether without the concurrence of both the damage would have resulted at all, the verdict must be for the defendant.   (*Refused.*)

*Defendant's 6th Prayer.*—That if the jury shall find from the evidence that the plaintiff and defendant formed the contract offered in evidence and dated September 29th, 1904, and that the defendant in pursuance of said contract installed a combined freight and passenger elevator in the plaintiff's building, No. 11 E. Lexington street, and that the plans and drawings for the said elevator were approved by the plaintiff's architect, and that the said elevator as finally completed was not in accordance with the said drawings and plans therefor, and the specifications as to workmanship and material; and if the jury shall further find that the plaintiff retained the said elevator and owes the defendant for work and materials therefor according to the said contract a balance of $600 and $70 for other work done on said elevator, and that the difference between the value of the elevator as the defendant contracted to install it for the plaintiff and the value of the elevator as actually installed shall be less than the said sum of $670, the verdict must be for the defendant; but if the jury shall find that the difference in the value of the said elevator as contracted for and its value as installed is in excess of the said sum of $670 that then the said sum of $670 shall be considered in mitigation of damages by the jury and the verdict cannot be for the plaintiff in a sum greater than said excess. .
(*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*William S. Bryan, Jr.*, and *Samuel K. Dennis* (with whom were *T. Howard Embert, A. deR. Sappington* and *James U. Dennis* on the brief), for the appellant.

It is fundamental that for a breach of a contract only such damages can be recovered as *naturally* and ordinarily arise

from such breach of contract, and which therefore must be taken as having been in the contemplation of the parties when the contract was made. *Furstenberg's case*, 61 Md. 184; *B. & O.* v. *Pumphrey*, 59 Md. 399; *Telegraph Co.* v. *Gildersleeve*, 29 Md. 232; *Howard* v. *Stillwell and Bierce Co.*, 139 U. S. 207; *Claggett* v. *Easterday*, 42 Md. 617.

The measure of damages for the breach of a contract to furnish a chattel of a specified quality and character is the sum which it would cost to place the chattel in the condition in which it was agreed that it should be. *Central Trust Co.* v. *Arctic Ice Machine Co.*, 77 Md. 238; *Marsh* v. *McPherson*, 105 U. S. 718; *Stillwell Mnfg. Co.* v. *Phelps*, 130 U. S. 527; *N. Chicago Rlwy.* v. *Burnham*, 102 Fed. Rep. 673; *Lane* v. *Lantz*, 27 Md. 211; *Clark* v. *Johnson*, 42 S. W. Rep. 844; *Benjamin* v. *Hilliard*, 23 Howard, 150; *Brown* v. *Foster*, 51 Pa. St. 165; *Maudel* v. *Steel*, 8 M. & W. 858; *Sedgwick on Damages*, vol. 1, p. 275.

It is impossible for us to suppose that it was in the contemplation of the parties when the contract was made (especially as there is no evidence in the record showing such to be the case), that in the event of a breach of the contract as to the quality of the elevator furnished the parties contemplated that the elevator company should be liable for loss of the rentals of the different offices. This rental of the separate offices represents in reality the profits of running an office building, and are remote and purely speculative and contingent. *Woods* v. *White*, 66 Md. 61; *Gas Co.* v. *Baltimore Tar Co.*, 65 Md. 73.

The danger of departing from the rule of damages in such cases, as laid down in the *Arctic Ice Company's case*, 77 Md., and the impossibility of establishing any rational and just substitute rule, which will prevent the jury in some cases from finding an excessive verdict, could not be better illustrated than by showing the practical injustice and wrong done in this very case. Under the Court's rulings on the evidence and the prayers the jury found a verdict of $2,635 more consequential damages for loss of rent than the building could earn under extraordinarily favorable conditions.

If there had been a delay in installing the elevator thereby preventing the building being used at all the measure of damages would have been, not what the separate offices with light and heat and janitor services would have rented for, but the fair rental value of the building as an empty building. *Abbott* v. *Gatch*, 13 Md. 314.

That in agreeing to furnish an elevator for $1,600, the defendant never contemplated being liable for an alleged loss of rentals of offices amounting to $7,000, is manifest on the face of things. It is obvious, it is submitted, that neither the plaintiff nor the defendant imagined, when the contract for the installation of the elevator was made, that the $1,600, to be paid for the elevator included any payment for the assumption of this enormous risk; in short to furnish an elevator *and* a guaranty of rent. *Globe Refining Co.* v. *L. C. Oil Co.*, 190 U. S. 545.

So damages for the failure to deliver wheels to a carriage manufacturer cannot include the loss of profits of the carriage factory. *Connellsville Wagon Co.* v. *McFarland*, 3 L. R A., (N. S.) 709.

So for the loss of baggage by a common carrier the measure of damages is the actual value of the goods destroyed and the amount of damages to the goods not destroyed, with legal interest; and a recovery cannot be had for the deprivation of the use of the clothing, or for inconvenience, annoyance and mortification resulting therefrom. *Houston E. & W. Texas R'w'y* v. *Seale*, 28 Tex. Civil Appeals, 364.

So the delay in furnishing an ice plant to a creamery which was started does not justify a recovery of prospective profits. *Mfg. Co.* v. *Creamery Co.*, 120 Iowa, 588; See also *Crabbs* v. *Koontz*, 69 Md. 59, 62; *Potomac Works* v. *Barber*, 103 Md., 513, 514.

The uncertain and speculative character of the damages alleged to have been suffered through the inefficiency of the elevator in the loss of rentals of rooms in the office building is shown by the circumstances that whether the offices would be attractive to desirable tenants would depend not only upon

the efficiency of the elevator but also upon how the building was lighted and heated and cleaned, and upon the general skill and efficiency with which it was managed, the desirability of neighboring tenants, the solvency of the tenants themselves, and the general surroundings.

And it is submitted that there was grave error in rejecting the appellant's fourth prayer.

When on the *13th of September, 1905*, the defendant refused to do any further work on the elevator, it was the duty of the plaintiffs, if they wished to hold the defendant, to have at once had the elevator placed in proper condition. They had no right to aggravate and increase their damages at the appellant's expense by continuing to use an elevator which their experts declared was defective, until sometime during October, 1906, although they had long before been advised by their own experts Pierson and Adams, to remove the defendant's elevator and install a new one.

If a glazier in breach of his contracts fails to place a pane in a man's parlor window, the owner of the house should himself have a new pane of glass put in it; he can not let the window stay out of repair and then recover from the wrong doer for the injury which a rain storm does to his furniture. Natural justice and the law both require a person injured by another's breach of contract to do all he reasonably can to minimize the damages. *Warren* v. *Stoddard*, 105 U. S. 229; 8 *American & Eng. Ency. of Law*, (2nd ed.) 605; *Furstenburg* v. *Fawsett*, 61 Md. 191, 192; *Brantley on Contracts*, p. 251; *Wright* v. *Banks*, 110 N. Y. 239; *Colvin* v. *Oil Co.*, 66 S. C. 66.

*Richard B. Tippett* and *W. S. Bansemer*, for the appellees.

The one point in this appeal is upon the measure of damages; in each bill of exceptions the same point is pressed whether it be an objection to evidence or to prayers.

The appellant seeks to have this Court hold that the loss in rentals suffered by the appellee can not be recovered. In making this claim it disregards in toto that firmly established

rule of special damage, known as the second rule in the leading case of *Hadley* v. *Baxendale*, 9 Exch. 354, and frequently quoted and reiterated by this Court, and by the Courts of all States and countries to which the common law has spread. The rule amounts to this.   When a contract is made under special circumstances and those circumstances are communicated by one of the contracting parties to another, the damages resulting from the breach of the contract which they would reasonably contemplate are the amount of the injury which would ordinarily follow from a breach of contract under such special circumstances. *Arctic Ice Co.* v. *Md. Ice Co.*, 79 Md. 107; *Webster* v. *Woolford*, 81 Md. 331.

This law of special damage is well expounded in the recent case of *Machine Co.* v. *Compress Co.*, 105 Tenn. 204. "If it appear by surrounding circumstances that the contract was entered into and known by both parties to be entered into, to enable one of them to serve or accomplish a particular purpose, whether to secure a special gain, or to avoid an anticipated loss, the liability of the other for violation and the amount of damages will be fixed with reference to the effect of breach in hindering that object.   The proof of such circumstances makes it manifest that such damages were within contemplation of the parties.   Looking alone to the contract—silent as to such circumstances—such damages appear to arise very remotely and collaterally to the undertaking violated. But when the contract is considered in connection with the extrinsic facts there is established a natural and proximate relation of cause and effect between the breach and the injury."

The complete rule of damage is well set forth in *Boutin* v. *Rudd*, 27 C. C. A. 529, in which special losses resulting from a failure to tow a schooner were recovered the Court saying, such recovery should include both the consequences naturally following from the breach and such consequences as seem natural only in the light of special circumstances communicated to the defendant at the time of the contract.

In *New York Mining Co.* v. *Fraser*, 130 U. S. 622, the purchaser of machinery which turned out to be defective recov-

ered as part of his special damages, the wages paid his work-
men during their enforced idleness, caused by the defective
machinery; and by way of counter claim the purchaser recov-
ered a verdict of $10,500.

The cases are innumerable in which special consequences,
within the terms of the contract and within the reasonable con-
templation of the parties, are construed as warranting special
damages.

In *Gas Light Co. v. Colliday*, 25 Md. 1, 17–18, the special
circumstances were that the advantageous use and disposal o
the plaintiff's house, depended upon its being supplied and
equipped with gas. It was easily in contemplation that the
house, with such advantages, would command a certain rent
which would be materially diminished by being deprived
thereof. This Court held the rental depreciation "a proper
and fair element in the estimate of damages."

In *Furstenberg v. Fawsett*, 61 Md. 187, 191, the contract
broken was for the purchase of certain standing timber, to
cut and haul it away. Not only was the seller allowed to re-
cover the difference between the contract price and the market
price, but this Court added, "there is another element of dam-
age that must not be overlooked. It is safe to say that one
of the inducements on the part of the plaintiff to enter into
this contract, and that one of the objects in contemplation of
both parties to it was to have the land cleared for cultivation
within two years (the time for the operation of the contract).
The necessary result of a failure thus to clear it was to deprive
the plaintiff of the use of it, for a time at least as arable, tillable
land, and for such deprivation he is clearly entitled to such
damage as the jury upon proper evidence shall find he has
actually sustained thereby."

In *Colvin v. Oil Company*, 66 S. C. 66, 67, the stock of
cotton seed, spoiling in a factory, retarded by machinery prov-
ing defective, was held to be one of the items of special loss
recoverable from the vendor of the machinery.

In *Laufer v. Boynton Furnace Co.*, 84 Hun. 311, on account
of defective heating plant, flowers in greenhouse died; this loss
was held recoverable.

*In re Nimrod,* 141 Fed. 215, damages were allowed recovered for loss of the use of a tug boat to which defective machinery has been supplied by the defendant, of course the cost of replacing the bad machinery was also allowed.

A case having all the elements of the one at bar is that of *Dixon, Wood & Co.* v. *Phillips Co.* 169 Pa. 168, where there was a failure to provide a proper generator tank melting furnace, the Court held that the measure of damage should embrace.   1. Amount expended to complete.   2. Expenses incurred and material lost *so long as it was reasonable to operate it in ascertaining whether it would operate successfully.*   3. Expenses in preserving tank and material in it, while making changes.   4. Fair compensation for the use of the plant while deprived of its use.

The absolute undertaking on the part of the appellant was to place in the office building, *an elevator in running order.* Right in point is *Accumulator Co.* v. *Dubuque St. Ry. Co.,* 64 Fed. (C. C. A.) 79. "The rule is well settled that damages recoverable of a manufacturer for breach of a warranty as to machinery which he contracts to furnish *and place in operation for a known purpose* are not confined to the differences between the machinery as warranted and as it proves to be, but include such consequential damages, as are the direct, immediate and probable result of the breach." Supported by *Swain* v. *Schiefflein,* 134 N. Y. 471, 473.

Two parallel cases to the one at bar to which particular attention is asked, are 1. *Barkley Furniture Co.* v. *Hascall,* 123 Ind. 509, the Court holding, "where a furniture company contracts with a hotel keeper to sell and deliver to him certain articles of furniture necessary to furnish rooms and to set them up ready for use by a day named, and fails to perform his contract until after that time, hotel keeper can recover for the loss of the use of the rooms, as they were to be furnished, such being fairly considered to have been within the contemplation of the parties at the time of the contract." 2 *Hextor* v. *Knox,* 63 N. Y. 566.   Here the owner of a hotel leased it for a term of years, and covenanted to erect an addi-

tion to it, by a specified time.    In this he defaulted.    The lease was made with reference to the use of the new structure, and "an allowance to the plaintiff of the rental value of the rooms in the new building during the time he was deprived of them by the defendant, based upon a consideration of the use to which they were applied, and which was contemplated by both parties when the lease was executed, affords the plaintiff only a just indemnity, and subjects the defendant to no greater liability than it may fairly be supposed he intended to assume when the covenant was made."    See also lower Courts opinion in 39 N. Y. Super. 109.    Another similar case is *Stewart* v. *Lanier House Co.*, 75 Ga. 582.    The appellant contends that our showing of a loss of rentals is simply an attempt to claim mere speculative and contingent profits, and so not cognizable.

-  The familiar case of *Abbott* v. *Gatch*, 13 Md. 333, disposes of all this.    "Whether they (damages) are of the one character or the other (*i. e.*, those reasonably resulting or those accidental) must depend upon the nature of the transaction, and in cases of building contracts on the objects and uses for which the structure may be designated.    The reason stated for discarding expected profits, as an element in the estimation of the loss, is that the party charged is not presumed to have made his contract with reference to such results unless the special circumstances are communicated to him at the time; but when they are such as he ought to have contemplated, as reasonable and probable result of his breach, they will affect the measure of damages in favor of the complaining party."    "It is a necessary presumption that the plaintiff knew that his work was intended for use and profit, by rent or otherwise, and that in contracting to complete the mill by a certain day, he acted with reference to these purposes as important to the defendant, and that he contemplated the loss of such profit as a reasonable and a probable result of a failure on his part."

Further the items of rentals for these segregated rooms which were rendered unavailable by appellant's default could

in no event come under the "speculative profits" class. · The rentals are the "remuneration for the employment" . of the building as mentioned on p. 108, 79 Md., *Ice Co. case.* ·

"Whenever profits are spoken of as not a subject of damages it will be found that something contingent upon future bargains. or speculations or states of the market are referred to." *R. R. Co.* v. *Howard*, 13 Howard, 307.

In the *Gatch case, supra*, the rental or rental value of the whole mill (the whole thereof being forced to remain idle) was allowed. The estimated profits there sought were termed speculative, because they depended on too many contingencies, *i. e.*, the quantity of flour that might be brought to be ground, the changes in prices, the labor and fuel questions, as well as the future running of the mill free from accidents, etc., etc.

Here, however, the building was and remained in operation, did actually run with the necessary attendants and outlay required for running the whole building, and the defective elevator occasioned not a whole but a partial failure or disposal of the offices, so that while the outlay was the same as if the offices had been available the income was cut down by items of "rent certain."

The mere fact that the exact amount of rentals that would have been received, and the exact number of tenants that would have come in or would have remained are not shown does not destroy the rentals as an element of damage. Hoffman "can not be expected to hunt up every person who left or was deterred from coming into it on account of the condition of the building, he can. only show this generally to enable the jury to approximate the loss." 75 Ga. 582 (*supra*).

"That only which is uncertain as a consequence and not that which is uncertain in amount is barred." *Wakeman* v· *Wheeler & Wilson*, 101 N. Y. 212; *Trigg* v. *Clay*, 88· Va. 335, 336; *Lanahan* v. *Heaver*, 79 Md. 422; *Simpson* v. *London R. W. Co.*, 1 Q. B. Div. 277.

The law is more concerned with giving to the plaintiff full compensation for the loss sustained, than in requiring absolute certainty as to the amount of loss laid before the jury. *B. & O. R. R. Co.* v. *Stewart*, 79 Md. 500, 501.

· We can not conceive of unliquidated damages being certain in amount. "When the plaintiff produces such evidence as would authorize the Court upon legitimate and proper infer-ences, to ascertain the amount of the profits which would have been made, he will be entitled to recover them." *Lavens* v. *Leibs*, 42 N. Y. Supp. 92.

BURKE, J., delivered the opinion of the Court.

The appellees, in August 1904, began the erection upon their lot number 11 East Lexington street, a six-story office building. This building was completed and occupied about the first of April, 1905. On the 7th day of October, 1904, the parties to this appeal entered into a contract by which the appellant, the Winslow Elevator and Machine Company, in consideration of the sum of sixteen hundred dollars, agreed to furnish and erect in a workmanlike and substantial manner in said office building one electric combined passenger and freight elevator in accordance with certain specifications set out in the contract. The elevator was to be furnished and in working order according to these specifications by the fifteenth day of January, 1905, subject to limitations of strikes, lock outs, accidents, and other unavoidable causes. Incorporated in this contract was this guarantee: "We guarantee all the labor and material furnished to be of the best grade and free from defects, and will replace defective apparatus within two years, provided an inspection proves such claim; and also that the apparatus will work to its rated capacity and will do its work when kept clean, dry and in good condition, provided you employ competent attendants."

On January 14th, 1907, the appellees sued the appellant in the Superior Court of Baltimore City for a breach of the con-tract. The declaration contains the six common counts, and one special count, which alleged the breach for which the suit was brought to be that the appellant did not erect the elevator in a good and workmanlike manner in accordance with the proposal and specifications embraced in the contract. The count further averred that as a result of the unsafe and

defective construction of the elevator and its unsatisfactory operation and working the plaintiff "lost large sums of money by the loss of tenants in the said building, who removed therefrom, and from others who refused to rent the offices in said building by reason of the general complaint of said elevator due to its improper, defective and dangerous construction, and sustained much other loss and damage."

To the six common counts the appellant pleaded the general issue plea, and traversed the seventh plea. Issue was joined, and the case proceeded to trial before a jury, resulting in a verdict and judgment for the appellee for the sum of seven thousand dollars. From this judgment the appeal now before us was taken.

The testimony appearing in the record is very conflicting. But it is not necessary for us to discuss it at length, or to decide upon which side of the case is found the weight or preponderance of evidence. The defendant insisted that it had performed all its obligations under the contract, and it offered evidence, if the jury had found it to be true, to have justified a verdict in its favor. On the other hand, the evidence adduced by the plaintiffs proved the breach alleged in the declaration. It was exclusively the province of the jury to decide upon the weight and sufficiency in fact of the evidence, and as they accepted the evidence of the plaintiff as to the defective workmanship and construction of the elevator we are bound by their finding upon these questions, and therefore, a minute examination of the evidence, in the absence of any question as to its legal sufficiency, becomes unnecessary.

There is only one question in the case, and that is: Were the plaintiffs entitled to recover for the loss of rents claimed in the declaration? According to the evidence of Mr. Hoffman the direct loss sustained in the purchase of a new elevator, for repairs, &c., was $1,565. The jury, therefore, allowed $5,435, for loss of rents. The evidence, some of which was taken subject to exception, showed that the building, was one of the first erected after the fire in February, 1904, and that there was then a great demand for offices, and that rents were

high.   The building has forty-five office rooms, and one large room on the first floor which was at first rented for $3,000 per year, but was subsequently reduced to $2,000.   It is also shown that following the completion of other office buildings rents began to decline, and the plaintiffs were obliged in con-sequence to make material reductions in the rent.   There were forty-five offices in the building, and upon each Mr. Hoffman fixed a certain rental value.   According to this sched-ule of prices the estimated yearly income from these rooms was $10,800, or $900 per month.   Before the building was com-pleted seven or eight offices had been rented, and Mr. Hoff-man was diligent in his efforts to rent all the rooms.   There was evidence tending to show general complaint about the elevator; that in some instances reduction in rents was made on account of the bad elevator service; and that this bad serv-ice was a great objection to tenants, and to others who might otherwise have rented offices in the building.   Much of the testimony on the question as to what extent the elevator did in fact prevent people, who would have otherwise rented, from becoming tenants is inconclusive and conjectural, and we have been unable to find any reasonably definite evidence upon which the jury could have found such a great loss of rents. This circumstance strikingly demonstrates the necessity of applying the correct rule for the measurement of damages in cases like the present.

In the leading case of *Hadley* v. *Baxendale*, 9 Exch. 341, BARON ALDERSON stated the rule of damages in cases for breach of contract to be this: "When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be con-sidered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to *have been in the contemplation of both parties* at the time they made the con-tract, as the probable result of the breach of it.   Now, if the special circumstances under which the contract was actually

made, *were communicated* by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, for such a breach of contract. For had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them." The Court granted a new trial in that case upon the ground that, "the Judge ought to have told the jury that upon the facts then before them, they ought not to take the loss of profits into consideration at all in estimating the damages." The second branch of this rule, like the famous judgment of CHIEF JUSTICE MARSHALL in *Marbury* v. *Madison*, 1 Cranch, 137, which declared that an Act of Congress contrary to the Constitution was void, was an *obiter dictum*—still it has been consistently followed in later cases, and, as said by JUDGE PEARCE in the *Western Union Telegraph Company* v. *N. Lehman & Bro.*, 105 Md. 44, "remains the law of England, and has been generally approved in this country, and has been too often recognized in this State to be departed from, even if we were so disposed." It was approved in the *United States Telegraph Company* v. *Gildersleeve*, 29 Md. 233; the *Maryland Ice Company* v. *Arctic Machine Manufacturing Company*, 77 Md. 103; *Webster* v. *Woolford*, 81 Md. 329, and in the recent case of *Russell* v. *Stoops*, 106 Md. 138, decided May 17th, 1907.

In *Webster* v. *Woolford, supra*, JUDGE ROBINSON said that "the first part of the rule as thus laid down applies to cases in which the damages are the direct and natural result of the breach of the contract, and which the law presumes to have

been in contemplation of both parties.    The latter part of the rule applies in cases where special damages are claimed under special circumstances made known by the plaintiff to the defendant at the time the contract was made; and in such cases the plaintiff is entitled to recover such damages as may reasonably be supposed to have been in contemplation of both parties in view of the circumstances thus disclosed."

It must be admitted that the loss of rents cannot be recovered upon the ground of interruption, or destruction of the plaintiff's business, because there was no established business to be injured or destroyed.    It is well settled that before a recovery can be had upon this ground it must appear that the business, which is claimed to have been injured, was an established one, and that it had been conducted successfully for such a length of time that the profits thereof could be ascertained with reasonable certainty.    But "when a new business, or enterprise is floated, and damages by way of profits are claimed for its interruption, or prevention they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative, and remote, existing only in anticipation."    13 *Cyc.* 59.    Damages for losses sustained for injury to business may be recovered in that class of cases to which the cases of *Werner* v. *Otto*, 40 Md. 16, and *Lawson* v. *Price*, 45 Md. 123, belong.

Nor is it contended that the loss of rents claimed can be recovered under the first part of the rule in *Hadley* v. *Baxendale*, because obviously such losses are not the direct and natural result of the breach alleged.    They are special, or consequential damages for which recovery is sought under the second part of that rule which is expressly relied upon by the appellees.    In the statement of this rule it will be observed that general language is used, and it has been found that its application to the facts of particular cases has given rise to questions of great nicety and difficulty.    While the rule has been universally recognized, the instances of its application present some confusion.    It is true that in this case

the appellant knew at the time he made the contract that the elevator was to be installed in an office building; but it would seem to be clear, both upon reason and authority, that *mere knowledge* of that fact would not be sufficient to render it liable for the special losses claimed in this suit.   To fix such a liability upon it upon that ground alone, and in this case there is no other upon which it can rest, would be a startling and dangerous proposition.   Under such a rule the plumber, the gas fitter, the stair builder, or the machinist who defaulted in his contract to do certain work upon any of the great office buildings might be held liable for enormous special damages simply because he knew his contract had reference to such a building.   Certainly no support can be found in *Hadley* v. *Baxendale*, for such a position, and we have discovered none elsewhere.

Where a recovery is asked under the second part of the rule stated in that case, which constitutes an exception to the general rule upon the measure of damages, the evidence must show that the "special circumstances, being in view of both parties to the contract, constituted its basis."   The rule is never applied unless the evidence warrants the conclusion that the contract was, to some extent, based upon the special circumstances out of which the injury arose.   To apply this rule the evidence must show that "the knowledge must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition."   *British Columbia Saw Mill Company* v. *Nettleship*, L. R. 3 C. P. 509.

In the *Globe Refining Company* v. *The Landa Cotton Oil Company*, 190 U. S. 540, special damages were sought to be recovered for a breach of contract, in which, upon the facts, there were much stronger reasons than in this case for the application for the rule for which the appellee here contends.   In that case the defendant had defaulted in his contract to deliver certain tanks of crude oil to the plaintiff.   By the terms of the contract the oil was to be delivered *f. o. b.*

*buyer's tanks at seller's mill.*    The plaintiff sought to recover, as part of his damages, the cost of transporting tanks to the defendant's mill to receive the oil, and also for loss of the use of the tanks, &c., upon the ground that these losses were in the contemplation of the parties at the time the contract was made.    But it was held that these losses could not be recovered.    In the course of its opinion the Court said: "The old law seems to have regarded it as technically in the election of the promisor to perform, or pay damages; *Bromage* v. *Gunning*, 1 Rolle, 368; *Hulbert* v. *Hart*, 1 Vern. 133.    It is true that, as people when contracting contemplate performance, not breach, they commonly say little or nothing at all as to what shall happen in the latter event, and the common rule had been worked out by common sense, which has established what the parties would have said if they had spoken about the matter.    But a man can never be absolutely certain of performing any contract when the time of performance arrives, and in many cases, he obviously is taking a risk of an event, which is wholly, or to an appreciable extent beyond his control.    The extent of the liability in such cases is likely to be within his contemplation, and whether it is or not should be worked out on terms which fairly may be presumed he would have assented to if they had been presented to his mind."

There is nothing in the contract, or in the evidence, that would make the appellant responsible for these special losses.    It would be most unreasonable to presume that he would have assented to the contract upon such a condition, and it does not appear that the plaintiffs believed at the time that the appellant assumed liability for such losses.    But assuming *ex gratia*, that the contract is one which falls within the rule contended for, the losses claimed could not be recovered, because they are too uncertain and contingent.    We must apply to damages such as are sued for in this case the same principles which govern in cases where profits are sought to be recovered for a breach of contract.    The real thing claimed here is the income, or profit which the owners might have received from the rent of the building had the defendant performed the contract.

There are cases in which such damages have been recovered; and cases in which such a recovery has been denied. The distinction between the two groups, or classes of cases, which is broad and obvious, was clearly stated by CHIEF JUSTICE NELSON in *Masterton* v. *Mayor of Brooklyn*, 7 Hill, 61. The principle of that case has been generally approved by the Courts. It was adopted by the Supreme Court of the United States in *P., W. B. R. R. Co.* v. *Story*, 13 Howard, 307, and is the settled rule in this State. *Abbott* v. *Gatch*, 13 Md. 334; *Lawson* v. *Price*, 45 Md. 123; *B. & O. R. R. Co.* v. *Brydon*, 65 Md. 198; *Shaefer* v. *Wilson*, 44 Md. 268, and many other cases.

In *Lanahan* v. *Heaver*, 79 Md. 419, JUDGE McSHERRY states the rule to be that "whenever it is purely problematical whether any profits would be realized at all, by reason of contingencies which might never happen, *or where the profits have reference to dependent or collateral engagements entered into on the faith of the performance of the principal contract*, there, without regard for any uncertainty as to mere amounts, probable profits cannot be recovered, because too speculative, indefinite and remote." This principle is in no manner affected by the second part of the rule in *Hadley* v. *Baxendale, supra*. In *Wolcott* v. *Mount*, 36 N. J. L. 269, the Court said: "It must not be supposed that, under the principle of *Hadley* v. *Baxendale*, mere speculative profits, such as might be conjectured to have been the probable results of an adventure which was defeated by the breach of the contract sued on, the gains from which are entirely conjectural, with respect to which no means exist of ascertaining, even approximately, the probable results, can, under any circumstances, be brought within the range of damages recoverable. The cardinal principle in relation to the damages to be compensated for on the breach of a contract, that the plaintiff must establish the quantum of his loss by evidence from which the jury will be able to estimate the extent of his injury, will exclude all such elements of injury as incapable of being ascertained by the usual rules of evidence to a reasonable certainty."

When the claim of the plaintiffs for the recovery of lost rent is considered in the light of these rules it certainly must be denied.   What rent they might have received from the building was not only dependent upon collateral engagements with persons who might rent the rooms, but upon many other considerations, such as location, desirability of rooms, the amount of rent asked, light and air, competition of other buildings, the number of tenants, the ability of the owners to keep the rooms occupied, and the general character of the management of the building.   There are so many elements of uncertainty which enter into and affect the question that, any estimate of loss could be little short of a guess.   The special damages sued for in this case are so uncertain and incapable of reason-able ascertainment that they cannot be recovered.

It follows that the Court erred in refusing to strike out the testimony referred to in the first and second bills of exception, and in granting the plaintiff's second prayer.   The portion of that prayer which allows a recovery for loss of rents is alone objectionable, the other part is conceded to be correct.   We find no error in the ruling upon the defendant's prayers.   Its fourth and fifth prayers announce correct principles of law, but are inapplicable to the facts of the case.   Its sixth and seventh prayers do not express as clearly and accurately the measure of damages, as applied to the facts, as does the earlier part of the plaintiff's second prayer, and that part of the prayer may be taken upon the retrial of the case as expressing the true measure of damages.

> *Judgment reversed and new trial awarded, the appellees to pay the costs.*