## JACKSON *v.* LINTHICUM

[No. 76, October Term, 1948.]

*Decided February 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William D. Gould*, with whom were *Gould & Edmondson* on the brief, for the appellant.

*Charles H. Gibson* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Josiah F. Linthicum brought suit in the Circuit Court for Dorchester County upon the common counts and a special count for the care and maintenance of a dairy herd owned by Creston E. Jackson for the period from April 15, 1946 to January 25, 1947. The case was heard by the Court, without a jury, and resulted in a verdict and judgment for the appellee in the amount of $3128.33. Upon motion for a new trial, the plaintiff agreed to a reduction of $250, and upon the filing of a remittitur, judgment was entered for the sum of $2878.33. Appeal was entered from that judgment.

Linthicum is 55 years of age and the owner of two adjoining farms in Dorchester County, where for some years past he carried on the business of dairy farming. Each farm has suitable barns, milk houses and farm equipment. In January, 1946, he decided to go out of the business and sold his herd, consisting of high-grade Holsteins and Guernseys, to Jackson, who removed it to Talbot County. On April 15, 1946, Jackson brought the herd back. He urged Linthicum to buy it back, but the latter refused. He then asked Linthicum to take it on a share basis, but the latter refused. He then said he had no place to keep the cattle, and asked Linthicum for the use of his barns. Linthicum agreed to this, but nothing was said about compensation, or how long the cattle were to remain. For about 14 weeks Linthicum and his

son milked the cows night and morning. He arranged for the sale and delivery of the milk, and generally supervised the operation. An employee of Jackson occupied a tenant house on one of the farms. Jackson authorized Linthicum to buy feed and hay. In August, Jackson paid some money on account, but kept insisting that Linthicum handle the matter on shares. Linthicum always refused, but was unable to get Jackson to agree as to terms, or to take the cattle away until the matter was brought to a head by the rendition of a bill. During the period of some 41 weeks that the cattle were on the farms, Linthicum turned over to Jackson, or deposited to his account, milk checks and other receipts totaling $13,543.13. Jackson testified that the expenses during that period exceeded the receipts.

At the trial below the chief contention of the appellant was that Linthicum had tacitly agreed to keep the cattle for a share of the profits. The trial court found that there was never any agreement between the parties, and that the plaintiff's action was sustainable under the theory of *quantum meruit*. See *Restatement, Restitution, (Contracts)* § 129(c) ; *Stockett v. Watkins Adm'rs*, 2 Gill. & J. 326, 342, 20 Am. Dec. 438. This conclusion is not seriously challenged. The appellant contends, however, that certain items allowed by the court were excessive and against the weight of the evidence. Items for personal services, rent of the barns and tenant house, electricity, and damage to a Dodge truck, are not seriously questioned. The principal objection is as to the allowance of $700 for the pasturage of a red top clover field (35 acres at $20 per acre), and $500 for pasturage of a field of lespedeza, clover and timothy (100 acres at $5 per acre), as set out in the opinion of the court.

As none of the testimony is set out in the appendices, we might properly decline to consider the question at all. *Platt v. Wilson*, 191 Md. 371, 62 A. 2d 191. But from the substance of the testimony stated in the briefs it appears that the plaintiff based his valuation ($20 an acre for the clover) in part upon the fact that he had

bought standing clover hay from a Mr. Jones the previous year for $25 an acre, and that Jones had offered him $20 an acre for the field in question in 1946. He put a value of $10 an acre on the mixed field, but the court only allowed $5 an acre. Both estimates were corroborated by Mr. Jones. Both witnesses admitted in cross-examination that there would be some advantage to the farm if the hay were consumed by pasturage rather than cut and carried away, but were unable to say what that would amount to in dollars and cents. It was not disputed that the manure from the herd remained on the farm and was not sold. The appellant contends that it was error for the court to base an allowance for pasturage upon testimony as to the value of standing hay, to be cut and removed at the buyer's expense, without making an allowance for the value of manure left upon the premises.

It is generally held that the owner of property, without other qualification, may estimate its value. *Bailey v. Ford,* 151 Md. 664, 667, 135 A. 835; *Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Messenger,* 181 Md. 295, 302, 29 A. 2d 653; *3 Wigmore, Evidence,* 3d Ed., § 716. The rule has been applied to farm produce, as where standing crops are destroyed by fires negligently started. *Anderson v. Chicago B. & Q. Ry.,* 84 Neb. 311, 120 N. W. 1114, 133 Am. St. Rep. 626. In this, as in other instances, the courts have not permitted the lack of an exact or objective standard of value to prevent the recovery of just compensation. We have also said that "it is settled by the general current of American as well as English authorities, that a tenant, under a farming lease or contract, has no right to remove from the premises so occupied, without an express stipulation to that effect, any manure made in whole or in part from the produce of the land." *Gallagher v. Shipley,* 24 Md. 418, 427, 187 Am. Dec. 611. See also *Bonnell v. Allen,* 53 Ind. 130 (dairy herd). But here the tenant (if Jackson can be so termed) is not claiming title to the manure

but merely an allowance in determining the reasonable value of the pasturage.

It appears from the plaintiff's remittitur filed in the record that the trial court considered the reasonable value of the manure in arriving at the final verdict, and fixed such value at $250. Rule 9(b), Rules of Practice and Procedure, part 3, subd. III, Trials, relating to trials by the court, provides that "upon a motion for a new trial the court may open such judgment, revise it or amend it, and in its discretion may take additional testimony and direct the entry of a new judgment." Since it is not shown that the court passed any order requiring a remittitur, we must assume that the court revised the original verdict in the light of the testimony already before it. Rule 9(c) provides that * * * "Upon appeal the Court of Appeals may review upon both the law and the evidence, but the judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, * * *". It should be noted that at no time during the trial, or on the hearing of the motion for a new trial, does it appear that the appellant made any proffer of testimony on the subject. In the nature of things it would seem that the value of droppings in a field would not be susceptible of precise determination. The initial allowance of $1200 for pasturage was less than the testimony would have supported, and when this was further reduced by the trial Court, we are unable to find that the judgment was clearly erroneous and against the weight of the evidence, or that the appellant was prejudiced by the action of the trial court in not reopening the case. Other points raised by the appellant, as to the use of milk, and cream to make butter, for his own use, some of which he gave to the appellant, are too trivial to affect the fairness of the verdict.

*Judgment affirmed, with costs.*