## SMITH ET AL. *v.* POTOMAC ELECTRIC POWER COMPANY

[No. 321, September Term, 1963.]

52

*Decided July 20, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Waldo Burnside* for Alfred H. Smith, one of the appellants.

*Alger Y. Barbee,* with whom were *Charles C. Futterer* and *Barbee & Starratt* on the brief, for the Thos. Somerville Company, the other appellant.

*Richard W. Emory,* with whom were *Jerrold V. Powers, Cornelius Means, Venable, Baetjer & Howard* and *Sasscer, Clagett & Powers* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The property owner, Thos. Somerville Co. (Somerville), and Alfred H. Smith, who, for convenience, may be called Somerville's tenant or lessee, appeal separately (both appeals being combined in one record) from judgments entered upon the inquisition of a jury in a condemnation suit instituted by Potomac Electric Power Company (PEPCO). The taking by eminent domain is for purposes of a high tension electric line, and the validity of the taking is not questioned. Somerville was awarded damages of $42,000 for the taking of the property and Smith was awarded nothing for the value of the remaining term of his "lease." The appellants complain of some of the court's rulings on evidence and of some of its instructions to the jury.

The tract in question comprises 4.624 acres of land at or near Muirkirk in Prince George's County. It is not quite rec-

tangular in shape, and is 250 feet in width and approximately 800 feet in length, taking the average of the two sides. One of the short sides abuts on the southeastern side of the right of way of the Baltimore & Ohio Railroad. Somerville, which acquired the property from the Washington Brick Company (the Brick Company) owned a total of about 68.5 acres on that side of the railroad, when this suit was filed, and the tract condemned cuts a band across it almost in the middle, severing the two remaining parts of the tract. To offset or minimize the effect of the severance, PEPCO proposed by its petition (and these proposals were incorporated in the inquisition) that certain rights outlined as follows be reserved to Somerville and its successors in ownership of the severed tracts: (A) that they, their officers, employees, etc., and visitors may, at their own risk cross the strip at any time and at any and all points; (B) and (C) to construct, maintain and use, and to permit others to use, one or more roads and a railroad line across the strip at approximately right angles to it, subject to limitations as to elevation; (D) to construct, operate, maintain and use, and to permit others to use, underground sewer, water, gas and other utility lines also crossing the strip at right angles; and (E) to require PEPCO and its successors, without expense to them, to dedicate to public use any such road or underground utility line.

Somerville and its predecessor had operated a brick manufacturing plant on the tract for some years prior to this suit, which was instituted in August, 1962. On May 3, 1962, Somerville's predecessor in ownership of the tract, the Brick Company (of which Thomas H. Somerville was the President), entered into an agreement with Smith (for convenience usually referred to below as "the lease") by which the Brick Company sold to Smith and Smith agreed to purchase the sand and gravel in and upon the tract here involved at a price of 15¢ per cubic yard (equivalent to 10¢ a ton). The lease required that all sand and gravel to be mined and dug thereunder be removed within two years. It also limited the depth to which Smith could dig (though the Brick Company or Somerville later permitted this depth to be exceeded by Smith) and it required Smith to grade and level the areas mined at the expiration of

the mining period. Smith could terminate the agreement when the mining of sand and gravel from the tract should no longer be profitable. This point was apparently not reached and the lease had about ten months still to run when this suit was tried and the condemnation terminated the lease.

The appellant Somerville's first contention is that the trial court was in error in declining to give the jury a definition of consequential damages and in instructing the jury that it could offset against such damages the value of the rights of user in the strip being condemned which were to be retained by the owner of the remaining property. The main thrust of this contention appears to be that the result of these alleged errors was that the jury deducted the value of these rights of user from the value of the strip taken. Though it might perhaps have been desirable to state that the only consequential damages suggested in the case were due either to severance or to what the president of Somerville described as the "nuisance" of the high tension wires with respect to the sale or leasing of the remaining property, we think that the instructions given were not misleading because of the absence of such a statement and that Somerville was not prejudiced by its absence. (Cf. *City of Baltimore v. State Roads Comm.,* 232 Md. 145, 154, 192 A. 2d 271, holding it unnecessary to have given an abstractly correct instruction, where its effect might have been to confuse the jury.) The instructions made it clear that there were claims for damages in addition to and separate from the damages payable as an irreducible minimum for the value of the fee in the 250-foot strip, and these damages were referred to as consequential. The value, if any, of these claims for severance damage and "nuisance" (the latter being rather nebulous in a heavy industrial use area) was left entirely to the jury, and the court was emphatic and explicit in telling the jury that the value of any rights of user of the strip could be set off against, but could not be allowed to an amount in excess of, the consequential damages. In one of the several passages in which the court so instructed the jury, it said, after pointing out that these might balance each other:

> "It may well be that you might find that the consequential damages, if you find any, may be in excess

"of what rights the company grants back, but you couldn't find that the rights they give back are in excess of the consequential damages because the net result of that would be that you would be taking that from the value of the fee, which the Court instructs you you cannot do."

In the face of such explicit instructions, we find Somerville's first contention to be untenable. The fact that at one point, in connection with telling the jury that there were no "affirmative benefits" to Somerville from the power line, the court referred to the rights of user as "mitigating benefits" does not alter our conclusion, for the court made it clear that these "mitigating benefits" were merely the rights of user in the strip and that they could be applied only as mitigating—meaning "offsetting, reducing or lessening"—the consequential damages, and that they could not be applied to the fee taking.

In reaching our conclusion that Somerville's first contention is without merit we have assumed without deciding that there was sufficient proof of severance damages to warrant the submission of the issue to the jury (which the appellee forcefully denies). Even with this assumption we find no error prejudicial to this appellant, if there were any error at all, in the manner in which this issue was submitted to the jury.

By its second contention, Somerville complains of the exclusion of the testimony of Captain Faigle, and of a real estate broker, Mr. Dieudonne, as to rentals of a tract owned by Captain Faigle less than half a mile away from the tract in question. The Faigle tract consisted of thirteen acres improved by roads and utilities, including five railroad sidings, and by buildings. The tract being condemned was raw land, scarred from mining operations, and in need of regrading; the other tract was a developed industrial park. It was agreed that use for a similar purpose was the highest and best use for the Somerville tract and that rezoning for such use could readily be obtained. Somerville sought to introduce evidence of rentals in the existing, neighboring industrial park as a basis for valuing its property on a capitalization of earnings if its property were developed for use as an industrial park. We think that the trial

court properly excluded the proffered evidence because the valuation sought to be deduced therefrom was too speculative in character. Somerville's land was not in fit condition for use for industrial development, considerable expense would be involved in putting it in suitable condition for such use, not one building intended for such use was constructed, under contract for construction, or even in a planning stage, and there were no tenants, actual or prospective. This court has consistently required more than speculation as a basis for proving damages in cases not involving condemnation (*Abbott v. Gatch,* 13 Md. 314; *Winslow Elevator Co. v. Hoffman,* 107 Md. 621, 69 A. 394; *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901; *Harry's Tavern, Inc. v. Pitarra,* 224 Md. 56, 166 A. 2d 908) ; and we think a like rule is also applicable in condemnation cases. In condemnation suits we have held admissible evidence of comparable sales as an aid to determining value and we have left much to the discretion of the trial court in deciding what sales are sufficiently comparable to be admissible (see, for example, *Bergeman v. State Roads Comm.,* 218 Md. 137, 146 A. 2d 48; *Lustine v. State Roads Comm.,* 217 Md. 274, 142 A. 2d 566), but there are limits to such evidence based upon comparability and relevance. See *Winepol v. State Roads Comm.,* 220 Md. 227, 231, 151 A. 2d 723, and *City of Baltimore v. State Roads Comm., supra,* 232 Md. at 151. We have also held that evidence based upon rentals of the subject property and the capitalized value thereof may be admissible. See the *Winepol, Bergeman* and *Lustine* cases just above cited and *State Roads Commission v. Novosel,* 203 Md. 619, 102 A. 2d 563.

In this case we do not reach the question of the admissibility of evidence of rentals of comparable properties, for we think that Captain Faigle's developed industrial park simply was not comparable to Somerville's tract, which was wholly undeveloped for similar use and had not even progressed to the planning stage for such use. See *Greenfield v. Philadelphia,* 282 Pa. 344, 354, 127 A. 768.

We may add that Somerville got the benefit of evidence based in part upon the results of the Faigle operation, despite the exclusion of direct testimony with regard thereto. One of its wit-

nesses, Mr. Dieudonne, a real estate expert, was permitted to testify that he checked his calculation of the value of the Somerville tract, which he stated, against a capitalization of earnings of the Faigle industrial park and that he had full information as to the leases involved in that operation. Cf. *Brinsfield v. M. & C. C. of Baltimore,* 236 Md. 66, 202 A. 2d 335.

The third contention made by Somerville is that the trial court erred in not permitting two of its officials to testify as to the value of the property. One of them, Thomas Somerville, III, was its president and a director and presumably a stockholder (though evidence of the last is not clear). The other was Mr. John C. Harding, Jr., its vice president and a stockholder, but not a director. There was no showing that either was qualified as an expert on real estate values. The question thus before us is whether a director, officer and/or shareholder of a corporation, concededly not qualified by reason of special knowledge, is entitled to testify as to the value of property on the basis that he comes within the rule allowing an owner of property to testify as to its value without qualification as an expert.

We have recognized, as to both real and personal property, the rule that an owner of property is at least presumptively qualified to testify to its value. See *Bresnan v. Weaver,* 151 Md. 375, 378, 135 Atl. 584; *Bailey v. Ford,* 151 Md. 664, 667, 135 Atl. 835; *Pennsylvania Threshing Co. v. Messenger,* 181 Md. 295, 29 A. 2d 653; *Jackson v. Linthicum,* 192 Md. 272, 64 A. 2d 133; *State Roads Commission v. Novosel,* 203 Md. 619, 624, 102 A. 2d 563; *Benton v. State,* 228 Md. 309, 179 A. 2d 718; *Cofflin v. State,* 230 Md. 139, 142-43, 186 A. 2d 216. In the *Coffin* case, we observed that "the rule does not rest on the fact that the owner has title, but rather on the fact that ordinarily an owner knows the property intimately and is familiar with its value." In that case we held that evidence as to value presented by a committee for an incompetent was improperly admitted, where it was not shown that the committee "possessed any knowledge of the value of [the] property." Courts in other jurisdictions have taken the same view as respects the testimony of corporate shareholders and directors not otherwise shown to have knowledge of value. It is well es-

tablished that, to quote the opinion of Justice Wilkins in *Winthrop Products Corp. v. Elroth Co.,* 331 Mass. 83, 117 N. E. 2d 157, "the mere holding of [corporate] office * * * is not enough, but the officer must have knowledge which in fact qualifies him," and that the same rule applies to the ownership of corporate stock. See the cases cited in the *Winthrop* opinion and those collected in 5 A.L.R. 1171, 45 A.L.R. 1494; 20 Am. Jur. *Evidence,* § 893. The only case we have found taking a contrary view is *Weber v. West Seattle Land and Improvement Co.,* 188 Wash. 512, 63 P. 2d 418, which involved a managing officer and principal shareholder of a corporation who testified to the value of its property at the date of its conversion by the opposite party to the suit. He became the sole owner of the property by a conveyance which took place four days after the date of conversion. The doubts that have been expressed about the rule making owners automatically competent on the issue of value without any showing of special knowledge make us loath to extend the rule further. See *State v. Assembly of God Pentecostal,* 230 Ore. 167, 368 P. 2d 937. There is nothing unusual in the law of evidence about rules placing corporate officers and individuals on a different footing. Cf. *Guernsey v. Loyola Federal Assn.,* 226 Md. 77, 80, 172 A. 2d 506; *Whitney v. Halibut, Inc.,* 235 Md. 517, 202 A. 2d 629; and cases cited in *Guernsey* holding corporate officers, directors, and shareholders to be competent witnesses in suit against an estate despite the Dead Man's Statute (Code, 1957, Art. 35, § 3).

The appellant Somerville's fourth claim is that the court erred in admitting the testimony of an engineer, Ben Dyer, who was not listed by PEPCO as a prospective witness in the answers to an interrogatory filed by Somerville calling for the listing of engineering experts. On Somerville's objection the court excluded Dyer's testimony when he was offered by PEPCO as a witness in chief, but allowed him to testify on rebuttal. His testimony related in large part to what it would cost the tenant Smith to comply with the provision of his lease with Somerville requiring that "[a]t the expiration of the mining, all mineral areas shall be graded and levelled by [Smith]." The purpose of this testimony was to show that the regrading expense to be offset against Smith's lost profits was greater than

Smith represented it as being, and thus to hold down the damages to which Smith would be entitled for termination of his lease. The testimony had no bearing on the compensation owing to Somerville by the power company, and thus Somerville cannot be said to have been prejudiced by it. Smith does not complain of the admission of this testimony.

Dyer's testimony also related to the cost of regrading certain neighboring property the sale prices of which had been introduced in evidence by two witnesses called by Somerville. These witnesses testified that the cost of regrading the neighboring property was similar to the cost of regrading the condemned property, and that the jury could thus base its estimate of value on the sale prices. Dyer's testimony went to show that it had cost less to regrade the neighboring property than it would to regrade the Somerville strip (due at least in part to the "wet bottom" of the latter, which impaired its ability to support heavy structures) and that unless an adjustment were made to reflect Somerville's higher cost of regrading, sales of property in the neighboring tract would not be comparable. Since Somerville, and not the power company, placed the value of the neighboring properties in issue, it was not improper for the testimony thus presented to be rebutted by Dyer. In any event, though exclusion of a witness' testimony may be one possible sanction under Rule 422 for refusal to comply with Rule U 12b, it is clearly not mandatory (even if permissible, which we do not decide) where, as here, non-compliance was not wilful. Compare the discussion in 2A Barron and Holtzoff, *Federal Practice and Procedure,* § 853 of the corresponding provisions of Federal Rule of Civil Procedure 37(b), and the opinion of Judge Niles in *Lagna v. Harlan,* The Daily Record, February 14, 1956.

Somerville's fifth and last contention grows out of an instruction given with regard to Smith's damages. The court instructed the jury that in determining Smith's loss from the termination of his contract or lease, the jury could consider as an offset thereto the cost of regrading the property for which Smith would have been liable but for the termination of the contract or lease by the taking. Somerville argues that there was no evidence of any loss of profit to Smith against which the cost

of regrading could be offset and that the jury must have assessed this cost against Somerville and that as an offset to this offset—and perhaps as more than merely an offset thereto if the figures would warrant it—Somerville should have been allowed as part of its damages the loss of its anticipated profit over the balance of the term of Smith's lease or contract. We are unable to accept either branch of Somerville's contention.

In the first place, the court specifically instructed the jury that the offset for the cost of regrading applied only to Smith's damages. We find no basis here for assuming that the jury disregarded the court's instruction on this point. This argument for Somerville is reminiscent of that under its first contention and is no more convincing. In the second place, the court correctly instructed the jury that the total damages would be the total value of the property taken, plus any consequential damages (if the jury should find any), that the jury was to determine the damages sustained by Somerville and the damages sustained by Smith and that the sum of their damages must be equal to the total damages awarded. These instructions were in accordance with our general rule recognized in many cases (such as *Lustine v. State Roads Comm., supra,* 217 Md. 274, 142 A. 2d 566, and cases therein cited) which is now substantially codified in § 5(b) of Art. 33A of the Code, as enacted by Ch. 52 of the Acts of 1963. Such an item as Somerville's loss of prospective profits under its contract with Smith could not be added to the damages for the taking of the land to which Somerville was entitled against PEPCO. The value of the minerals in place was included in the value of the land, and the contract or lease itself was in evidence. Cf. *State Roads Commission v. Creswell,* 235 Md. 220, 201 A. 2d 328. Here evidence not only of the quantity of gravel remaining in the ground and extracted but also of its price at the rate set forth in the lease or mining contract was admitted for its bearing on the market value of the property, as was done in *Arkansas State Highway Commission v. Cochran,* 230 Ark. 881, 327 S. W. 2d 733.

The appellant Smith raises four questions. Two of them relate to the cost of regrading the property. He claims that since the taking terminated his lease or contract, it terminated his obligation to regrade the property, and hence that the cost of

such regrading should not be offset against his damages because of the taking. We hold that these claims are not sustainable. See *M. & C.C. of Baltimore v. Gamse,* 132 Md. 290, 296-97, 104 A. 429.

Smith's other two claims relate to rulings which had the effect of preventing him from showing what profit he would have made under his lease during the remaining ten months that it had to run after the date of the taking.

The exclusion of testimony bearing on Smith's costs and profits per ton of gravel mined was proper in light of the general rule barring evidence of estimated profits of a particular operator from future removal of mineral deposits. See 4 Nichols, *Eminent Domain,* § 13.22, p. 427; *Lustine v. State Roads Commission, supra* (217 Md. at 279-80); *Tide Water Canal Co. v. Archer,* 9 G. & J. 479, 530, 534. The holding of the *Lustine* case that it was error to exclude evidence relating to the "income stream" of mineral properties related to an effort to show the return to a landlord from a fixed rental lease, not business profits. In *Novosel, supra,* we allowed admission of expert testimony based in part on past business profits, but the expert "was not permitted to give the [profit] figures." (203 Md. at 624). The value of the deposits in the place and condition in which they were at the time of the taking (that is, with the overburden removed) might have been shown. See *State Roads Comm. v. Creswell, supra.* In order to arrive at the value of Smith's interest therein—and hence at the amount of his damages—it would have been necessary to deduct from the value in place of the sand and gravel the contract price thereof and the cost of the regrading required by the contract.

Smith's claim that the case should be remanded pursuant to Rule 871 a for the taking of additional testimony since there was no evidence in the record relating to the value of his leasehold is without merit. There was nothing to prevent him from introducing evidence at the trial relating to the prevailing value of gravel leaseholds in the neighborhood and it would, we think, be unreasonable to charge either the appellee or the co-appellant in this case with further delay and expense by reason of his failure to do so. Since Smith was under an obligation imposed by the contract to restore the grade on the property—an obliga-

tion imposing substantial costs—it is doubtful that additional evidence would change the result. These factors make exercise of the discretion accorded the court by Rule 871 a inappropriate. Cf. *Blevins v. Mullan Construction Co.*, 235 Md. 188, 201 A. 2d 348, relating to exercise of discretion to grant leave to amend.

> *Judgments affirmed, the costs to be paid nine-tenths by the appellant Thos. Somerville Co., and one-tenth by the appellant Alfred H. Smith.*