COFFLIN *v.* STATE

[No. 79, September Term, 1962.]

*Decided December 6, 1962.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*C. Warren Colgan* for appellant.

*Gerard Wm. Wittstadt, Assistant Attorney General, Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney,* and *James Murphy, Assistant State's Attorney,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was charged, in a four-count indictment No. 29, jointly with one James Charles Liphart, with burglarizing a dwelling house at 4 Chancery Square, owned by a Miss Mills, and taking therefrom certain articles, chiefly silverware, of the value of $350, on December 28, 1961. In a second indictment, No. 30, he was jointly charged with the burglary of other articles, including two clocks, two swords and linen, of the value of $350. In a trial before the Court without a jury, he was found guilty on the 3rd count, grand larceny, in each indictment and sentenced to 18 months on each, to run consecutively. The appellant was also convicted under indictment, No. 33 of the larceny of a Ford automobile and sentenced to two years, to run consecutively. He appeals from these three convictions. He did not appeal from other convictions for possession of a deadly weapon, unauthorized use of an automobile, and attempt to escape.

The questions presented are: whether the State produced evidence legally sufficient to prove the value of goods taken to be more than $100.00, and whether there was legally sufficient evidence to prove the larceny of the automobile.

To identify and place a value upon certain articles, which the police had recovered from the accused and several other sources, the State produced as a witness, Mrs. Mignon M. Weikart. She testified that she had been appointed committee for Miss Mills on December 18, 1961, after the latter had been committed to a mental institution prior to the alleged burglary. Apparently, Miss Mills was her niece. She testified that she did not reside at 4 Chancery Square but had gone there once or twice a week to watch the furnace, or to obtain clothing for Miss Mills.

On December 30, 1961, she observed that a window had been broken and the house had been ransacked. Later, she went to the police station and identified some of the articles there assembled, particularly the two swords and the linens. When asked to express her opinion "as committee" of the value of the linens, there was an objection, which the Court overruled on the ground that she was "the legal representa-

tive". The witness then replied: "very frankly I don't believe I could answer". When asked about the value of an antique clock she replied: "I'm sorry, I had a gentleman looking at it now to go all over everything but I don't have it with me". When asked about the value of the silverware shown in a photograph taken at the police station, she replied: "I wouldn't know".

Despite the repeated protestations of Mrs. Weikart that she did not know the value of any of the articles taken, some of which she identified by the initials thereon, she was pressed by counsel for the State to state a value "just merely as the custodian of this property". She then estimated the value of one of the clocks listed in indictment No. 30 at "about $90". She also valued the two swords listed in indictment No. 30 at "say a hundred dollars. Of course, there is sentimental value attached to that". The swords had belonged to her father and to Miss Mills' brother, respectively. She admitted that she had employed an appraiser, Mr. Miller, president of E. T. Newell & Co., to go to the police station and appraise the articles there assembled. Over objection, she testified from a copy of the appraisal made by Mr. Miller, which was not offered in evidence, that the total value he placed on the articles was two hundred and eighty-eight dollars. But Mr. Miller was not called as a witness, nor was there any other testimony as to value.

It is well settled in this State that an owner of personal property in common use may express an opinion as to its value without qualification as an expert. *Bresnan v. Weaver,* 151 Md. 375, 378; *Bailey v. Ford,* 151 Md. 664, 667; *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 302; *Jackson v. Linthicum,* 192 Md. 272, 276. Cf. *State Roads Com. of Md. v. Novosel,* 203 Md. 619, 624. The case of *Mutual Fire Ins. Co. v. Owen,* 148 Md. 257, 267 is not here in point. The testimony of the owner's wife was admitted on the theory that she had taken an inventory of the goods, in her husband's store, at cost, based on actual records and in a few instances on wholesale catalogue prices. The rule applies in criminal as well as civil cases. *Jewell v. State,* 216 Md. 110, 112; *Shipley v. State,*

220 Md. 463, 466; *Benton v. State,* 228 Md. 309, 311. The rule is almost universally recognized. See Underhill, *Criminal Evidence* (5th ed.) § 603 P. 1474; Wigmore, *Evidence* (3rd ed.) § 716; 2 Wharton, *Criminal Evidence* (12th ed.) § 550. The cases are collected in an exhaustive note 37 A.L.R. 2d. 967. Wigmore, in an often quoted passage, seems to take the position that an owner is qualified *per se,* and that any lack of knowledge goes only to the weight of the evidence. But many courts have held that ownership establishes a rebuttable presumption of knowledge. See *Sykes v. Wood,* 91 So. 320 (Ala.), and cases collected in 37 A.L.R. 2d. *supra,* p. 984 *et seq.* It has been held that the rule does not rest on the fact that the owner has title, but rather on the fact that ordinarily an owner knows the property intimately and is familiar with its value. *Menici v. Orton Crane & Shovel Co.,* 189 N. E. 839 (Mass.). See also *Shea v. Hudson,* 165 Mass. 43, cited in both the *Bresnan* and *Bailey* cases, *supra,* in 151 Md., and in the *Messenger* case as well. Thus, an owner who has purchased the property in question or similar property would normally have some knowledge of its market price and present condition. In *Rubin v. Town of Arlington,* 99 N. E. 2d. 30 (Mass.) it was held that the qualification of an owner presented a preliminary question of fact for the trial judge, and this is the rule in other States. Thus, if it is demonstrated that the owner possesses no knowledge whatever of the market price and condition of the article in question, his testimony may be inadmissible. In *Shipley v. State, supra,* we noted that it was held in *Narango v. State,* 87 Tex. Crim. 493, 222 S. W. 564, that a bailee may likewise testify to value without qualification, but we found it unnecessary to pass on the point in that case.

In the instant case we think the testimony of Mrs. Weikart as to value was improperly admitted. The mere fact that she had been appointed committee for Miss Mills, presumably under Code (1957), Art. 16, sec. 135, and hence was under a duty to take custody of and manage the property of the owner, would not import knowledge of its market value. It was not shown that she possessed any knowledge of the value of that

or similar property. On the contrary, she expressly disavowed such knowledge, and this was corroborated by the fact that she sought expert advice. Of course, her testimony as to the expert's report to her was hearsay and inadmissible. See *Sykes v. Wood, supra.* Cf. *Baltimore & Ohio R.R. Co. v. Zapf,* 192 Md. 403, 411. This fixed a lump sum of $288 on all the articles in both indictments. She did not testify directly as to value, except in the case of one clock and the two swords mentioned in indictment No. 30, and her valuation of the swords was based largely on sentiment. Of course, the test is market value. *Jewell v. State, supra.* The burden was upon the State to prove in each indictment that the value of the goods taken was in excess of $100, under Code (1957), Art. 27, sec. 340. *Horsey v. State,* 225 Md. 80, 83.

The appellant was acquitted on the charges of burglary. This in itself serves to distinguish the cases of *Shipley v. State, supra, Holtman v. State,* 219 Md. 512, *Felkner v. State,* 218 Md. 300, *Rahe, Jr. v. State,* 222 Md. 508 and *McNeil v. State,* 227 Md. 298. Burglary and grand larceny are separate crimes, *Williams v. State,* 205 Md. 470, although they may overlap. *Young v. State,* 220 Md. 95, 100. The fact that breaking with intent to steal goods worth more than $100 may be found, even though the goods taken are valued at less than that amount, does not mitigate the extent of proof required to establish grand larceny of the goods actually converted. Nor is this a case, where the trier of facts might find a minimal value for numerous articles, as a matter of common knowledge. Antique clocks, family swords and silverware, we think, are in a different category from the common articles of clothing dealt with in the *Shipley* case. When the State failed to call the appraiser, it failed to make out a case. For all of these reasons we are constrained to reverse the convictions in each of these indictments and remand the cases for a new trial.

We find no merit in the appellant's second contention. By his own admission, contained in a signed statement to the police, the appellant and others "got" the automobile in question when it was parked on Gay Street. His co-defendant testified to the taking, and this was corroborated by the own-

er's testimony that his car was stolen and that he did not give permission to anyone to use it. Moreover, he identified a revolver found upon the appellant, as the one he kept in the glove compartment of his car. The evidence to establish the larceny of the car was legally sufficient.

*Judgments on indictments Nos. 29 and 30 reversed and new trial awarded; judgment on indictment No. 33 affirmed.*