JOHN ALAN LANGWORTHY v. STATE OF MARYLAND

[No. 47, September Term, 1978.]

*Decided March 28, 1979.*

Argued and reargued by *George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

Argued and reargued by *Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

590

ORTH, J., delivered the opinion of the Court.

We ordered the issuance of a writ of certiorari to the Court of Special Appeals in the case of *Langworthy v. State,* 39 Md. App. 559, 387 A. 2d 634 (1978) to determine the right of appeal by an accused who, charged with the commission of a crime under the jurisdiction of a circuit court, has successfully interposed the defense that he was insane at the time of its commission.

I

On 20 March 1978 the Circuit Court for Prince George's County ordered that John Alan Langworthy be confined in a facility designated by the Department of Health and Mental Hygiene for treatment. The order was the culmination in the circuit court of protracted proceedings in a criminal cause which began with the return of a three count indictment on 30 October 1974 presenting that Langworthy eleven days before had raped Deborah Eileen Poe (1st count), assaulted her with the intent to rape (2nd count) and assaulted and beat her (3rd count). The case came to trial on 28 July 1977 before the court sitting without a jury under a general plea of not guilty and a plea alleging insanity at the time of the commission of the offenses.[1] At the close of all the evidence the court denied Langworthy's motion for a judgment of acquittal. Guilt or innocence under the general plea and the plea of insanity were separately argued and separately determined. The verdicts are reflected in the order issued by the court:

> Upon consideration of the evidence presented to the Court in the above captioned matter, and the entry of a verdict by this Court that the defendant on the 19th day of October, 1974, was guilty of the crime of rape, but was insane at the time of the

---

1. Langworthy had interposed the insanity defense as an addition to his general plea of not guilty by filing a writing in open court on 12 January 1976 which read, as amended: "That the defendant was not criminally responsible at the time of the alleged offense, as a result of a mental disorder."

commission of the crime, it is this 2nd day of August 1977, hereby,

ORDERED, that John Alan Langworthy be and hereby is committed to the Department of Mental Hygiene, pursuant to Article 59, Section 27, of the Annotated Code of Maryland for confinement in one of the facilities of the State for examination and evaluation to determine, by the standards applicable to civil admission proceedings under Sections 11 and 12 of the above article, whether such person by reason of mental disorder would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others.

On 5 August 1977, Langworthy, in proper person, noted an appeal to the Court of Special Appeals. The order of 20 March 1978 confining Langworthy in a facility designated by the Department of Health and Mental Hygiene for treatment was upon a finding by the court that he, by reason of mental disorder would, if he became a free agent, be a danger to himself or to the safety of the person or property of others. The finding was on the basis of the report of Clifton T. Perkins Hospital, submitted pursuant to the order of 2 August 1977 that Langworthy be examined and evaluated, and other evidence adduced at a hearing on 13 March 1978. On 12 June 1978 the Court of Special Appeals dismissed Langworthy's appeal, *Langworthy v. State,* 39 Md. App. at 563, and we granted his petition for a writ of certiorari. The question is whether the intermediate appellate court erred in dismissing the appeal.

## II

The proceedings below were in complete conformance with the statutes of this State and the Maryland Rules of Procedure applicable when the defense of insanity at the time of the commission of an alleged offense is interposed. A person accused of a crime within the jurisdiction of a circuit court "may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* In addition to any of these pleas,

the defendant may interpose the defense of insanity as permitted by law." Maryland Rule 731 a.[2] The defense of insanity is permitted by Maryland Code (1957, 1972 Repl. Vol.) art. 59, § 25 (b):

> When it is desired to interpose the defense of insanity on behalf of one charged with the commission of a crime the defendant or his counsel shall at the time of pleading to the warrant, indictment or information unless the court for good cause shown shall allow a later plea, file a plea in writing in addition to the plea or pleas otherwise required or permitted by law, alleging that the defendant was insane at time of the commission of the alleged crime.[3]

When such plea of insanity has been entered

> [t]he judge of the court in which such warrant, indictment or information is pending and in which such plea of insanity has been entered shall have full power and authority to order an examination of the mental condition of such person by the Department of Mental Hygiene, subject to the provisions of § 26 of this article. [*Id.*] [4]

At a trial of any case where a plea in writing alleging that the defendant was insane at the time of the commission of

---

**2.** The rule in this form was approved and adopted by the Court of Appeals by order of 31 January 1977, effective 1 July 1977, as part of a revision of Chapter 700. The order provided that the new Rules shall "apply to all proceedings commenced on and after 1 July 1977, and insofar as practicable, to all proceedings then pending." Pleas were formerly covered by Rule 720, which read: "An accused may plead not guilty, not guilty by reason of insanity as provided by statute, guilty or, with the consent of the court, *nolo contendere*."

**3.** *See* Md. Rule 731 b 1: "The defense of insanity shall be interposed in writing by the defendant or his counsel and shall allege that the defendant was insane at the time of the commission of the offense charged," and Md. Rule 731 b 2: "A defense of insanity shall be interposed at the time the initial plea is made, unless good cause is shown."

**4.** Md. Code (1957, 1972 Repl. Vol.) art. 59, § 26 concerns the time of forwarding the Department of Mental Hygiene's reports of examination to the court.

the alleged crime has been filed by the defendant or his counsel

> . . . the court shall direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime. [*Id.*]

We think that the special verdict is also required in a non-jury trial. *See* Md. Rule 760; [5] *Turner v. State,* 5 Md. App. 584, 590, 248 A. 2d 801 (1968), *cert. denied,* 253 Md. 735 (1969).[6]

The significance of a plea of insanity is that "[a] defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Code (1957, 1972 Repl. Vol.) art. 59, § 25 (a).[7]

Three eventualities, which we now formulate, arise when there is a plea of insanity at the time of the commission of the offense in addition to a general plea of not guilty:

1) If the verdict on the general plea is not guilty, the plea of insanity becomes moot. Patently, a person, whether sane or insane, may not be held criminally responsible for an offense of which he has been acquitted. In such event, the

---

5. Maryland Rule 760 provides, in relevant part: "When a defendant is tried by the court sitting without a jury, the court shall render a verdict upon the facts and the law."

6. For the procedure to be followed at a non-jury trial and a jury trial when the defense of insanity has been interposed, *see* Bremer v. State, 18 Md. App. 291, 313-318, 307 A. 2d 503, *cert. denied,* 269 Md. 755 (1973), *cert. denied,* 415 U. S. 930 (1974); Strawderman v. State, 4 Md. App. 689, 698, 244 A. 2d 888 (1968).

We note that a bifurcated trial on the separate issues of guilt of the crimes and insanity is not constitutionally mandated and may not be had in this jurisdiction. Tull v. State, 230 Md. 596, 601, 188 A. 2d 150 (1963); Bremer v. State, *supra*; Sweeney v. State, 6 Md. App. 431, 439-440, 252 A. 2d 9 (1969). *See* Bartholomey v. State, 260 Md. 504, 525, 273 A. 2d 164 (1971), *vacated as to death sentence,* 408 U. S. 938 (1972).

7. All references in this opinion to "insanity" are in the context of this statutory meaning.

For a discussion of the history of responsibility for criminal acts, *see* Young v. State, 14 Md. App. 538, 540-549, 288 A. 2d 198, *cert. denied,* 265 Md. 744 (1972).

accused has attained all he sought, and walks out of the courtroom a free man.

2) If the verdict on the general plea is guilty and the special verdict on the additional plea is that the defendant was sane at the time of the commission of the offense, the court shall impose sentence. The accused has failed in all he sought by his pleas and on appeal from the judgment may challenge the propriety of both the finding of guilt of the substantive offense and the determination that he was sane at the time of its commission.

3) If the verdict on the general plea is guilty and the special verdict on the additional plea is that the accused was insane at the time of the commission of the offense, he has failed in what he sought under his general plea but attained what he sought by his additional plea, in that he shall not be held responsible for his criminal conduct. Two courses are then open in the trial court. In its discretion, it may either turn him loose or, as authorized by Code (1957, 1972 Repl. Vol.) art. 59, § 27, commit him "to the Department of Mental Hygiene for confinement in one of the facilities of the State for examination and evaluation to determine, by the standards applicable to civil admission proceedings under §§ 11 and 12 of [art. 59], whether such person by reason of mental disorder would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others. Upon the basis of the report by the facility, and any other evidence before it, the court may in its discretion, direct that the person be confined in a facility designated by the Department for treatment."

As we have indicated, the third eventuality occurred in Langworthy's case. The trial court, in the exercise of its discretion, had him committed for examination and evaluation as authorized by the statute. Upon the basis of the report thereby submitted and other evidence before it, the court directed that he be confined for treatment. Thus, the disposition of Langworthy was in full compliance with the statutory scheme.

## III

### (a)

The first step in determining whether the Court of Special Appeals erred in dismissing the appeal is to ascertain from what Langworthy appealed. The notice of appeal, filed by him in proper person, asserted that it was from "denial of his personal rights." There followed a listing of 28 "personal rights" which he designated as having been abridged, and a catchall — "For any such other and further denials of this appellant's personal rights as may be represented at any time." [8] The appeal was filed after the order that he be confined for examination and evaluation (predicated upon the verdicts that he was guilty of rape and was insane at the time of its commission) but before the order committing him for treatment because the examination and evaluation and other evidence established that he suffered from a mental disorder so as to be, if a free agent, a danger to himself or to the safety of the person or property of others. We do not reach the question whether a defendant may challenge in his criminal case an order committing him for treatment upon a finding, by the standards applicable to civil admission proceedings, that he suffered from a mental disorder which rendered him, if he became a free agent, a danger to himself or to the safety of the person or property of others. The appeal here, by its timing, could not be from the order of 20 March 1978 so committing Langworthy; that order was issued some seven months after the appeal was noted. Except for the bald assertion that there was "an involuntary insanity plea,"

---

8. The "personal rights" Langworthy designated were denial of fair and speedy trial, religious freedom, effective assistance of counsel, bail bond, due process, equal protection, right to freedom, rights to presumptions of sanity and innocence, right to work for a living, right against cruel and unusual punishment, right to private psychiatric evaluation by independent psychiatrist, adequate pretrial discovery, adequate pretrial investigation, right to suppress illegally obtained evidence, right to co-counsel status, of grand jury transcript and minutes, right to testify before grand jury, pretrial motions, including psychiatric examination of prosecutrix, right to be present at pretrial conference, right to adequate research materials, right to produce relevant evidence and witnesses, and right to a bifurcated trial. He also claimed there was an unreasonable, oppressive pretrial detention for three years, an unconstitutional trial by ordeal, an involuntary insanity plea, an illegal arrest, an involuntary servitude without criminal conviction, and an unconstitutional breach of agreement by the prosecutor.

Langworthy's notice of appeal attacked the verdict under the general plea that he was guilty of the substantive offense. The 40-page brief which he submitted to the Court of Special Appeals did not argue the insanity finding. It went to his conviction of rape, and it was the claims relating thereto which were re-argued in the reply brief to the State's brief controverting them.[9] Thus, Langworthy put properly before the intermediate appellate court only the propriety of the verdict that he was guilty of rape. Md. Rule 1031 c 2 and 5 and Rule 1046 f.

### (b)

The next inquiry is whether, in the circumstances here, an appeal lies from the verdict that Langworthy was guilty of rape.

A defendant may appeal from a final judgment entered in a criminal case by a circuit court, Code (1974) § 12-301 of the Courts and Judicial Proceedings Article, and, ordinarily, the appeal is premature until after final judgment, *Pearlman v. State,* 226 Md. 67, 70, 172 A. 2d 395 (1961). Section 12-101 (f) declares "final judgment" to mean "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken." [10] Usually, a criminal case is complete and disposed of when sentence has been pronounced, *Buckner v. State,* 11 Md. App. 55, 58-60, 272 A. 2d 828, *cert. denied,* 261 Md. 723 (1971),[11] and, generally,

---

9. Langworthy's brief focused on an alleged denial of a speedy trial, argued that the court below erred in finding him competent to stand trial, signalized with cursory argument four other of the alleged denials of personal rights specified in the notice of appeal, and, as to the remaining ones, did no more than assert: "Langworthy refers to the Court to his *pro se* Notice of Appeal ... and contends that the arguments there presented entitle him to relief."

10. The Revisor's note to § 12-101 (f) of the Courts and Judicial Proceedings Article states: "This definition does not attempt to specify what is an appealable final order. That is left to case law, as at present."

11. "In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended." Code (1974) § 12-301 of the Courts and Judicial Proceedings Article.

sentence is the punishment to be inflicted on the convicted person in the form of imprisonment or fine or both.

The legislative scheme contemplates that a person shall not be punished for a crime he commits when, at the time of its commission, he was insane as statutorily defined. If he was competent to stand trial, and, upon being tried, was found to have committed the criminal act charged to him but to have been insane at the time of its commission, the criminal case is disposed of in one of two ways. As we have seen, the court, in the exercise of judicial discretion, shall either set the defendant free or have him committed for examination and evaluation with respect to his propensity for harm as a free agent. Either action by the court suffices to have the criminal case reach "final judgment." Whether the court frees the defendant forthwith or holds him for evaluation, the action taken finally settles some disputed right or interest of the parties, and thus constitutes a final judgment. *Warren v. State,* 281 Md. 179, 183, 377 A. 2d 1169 (1977). *See Johnson v. State,* 274 Md. 29, 40, 333 A. 2d 37 (1975). Despite the lack of a "sentence" in the context of punishment inflicted, the determination of the trial court as to the disposition of the defendant is as final a judgment following the conviction as if a sentence inflicting punishment had been imposed. The general rule that pronouncement of sentence or the suspension of its imposition is required to comprise an appealable judgment in a criminal cause does not apply because punishment is legislatively prohibited and supplanted by the statutory alternatives applicable upon the successful interposition of the defense of insanity. In circumstances such as here exist, the defendant may appeal from the judgment, composed of the verdict that he committed the criminal act charged and the disposition of him, as a final judgment in the contemplation of the statutory authority for direct appeal. On the appeal, he may challenge both aspects of the judgment, or as Langworthy did, only one of them. We note that the disposition aspect may be reversed only upon an abuse of the judicial discretion exercised.

## IV

The Court of Special Appeals dismissed Langworthy's appeal, holding that "a defendant, except under rare circumstances not here apposite, has no right to take an appeal from an acquittal." *Langworthy v. State,* 39 Md. App. at 559-560. The fallacy in this reasoning is that Langworthy was found guilty of rape, and the dismissal of the appeal precluded appellate review of that conviction. As we have seen, the existing statutory scheme patently contemplates that there be first a determination of guilt or innocence under the general plea. This was the rationale of *Morris v. State,* 11 Md. App. 18, 272 A. 2d 663, *cert. denied,* 261 Md. 727 (1971). As the Court of Special Appeals observed in *Langworthy*:

> The critical point on which that opinion turned . . . was the absolute failure to give the defendant there the trial upon the merits which he sought. . . . [H]e strenuously maintained his innocence and sought an opportunity to prove it. [39 Md. App. at 561.]

The court pointed out that in reaching its decision in *Morris* it had found that there had been a denial of due process; it had stressed the critical nature of Morris' having been refused an opportunity to show his innocence. *Langworthy* at 562. *See Morris* at 25-26.

In short, the clear legislative intent regarding the successful interposition of a plea of insanity is not that an accused is to be found not guilty of the criminal act it was proved he committed, but that he shall not be punished therefor. Rather than be punished, he may go free or, under prescribed circumstances, be provided treatment for his mental disorder. Thus, the Court of Special Appeals was not correct when it indicated that Langworthy was "not guilty" by reason of insanity nor was the trial judge correct when he spoke in those terms in indicating from the bench what he intended to do. In any event, as the intermediate appellate court asserted: "[The trial judge's] verdict was clear that [Langworthy] 'was guilty of the crime of rape, but was insane

at the time of the commission of the crime.' " *Langworthy,* 39 Md. App. at 562-563.[12]

## V

We reverse the judgment of the Court of Special Appeals dismissing the appeal. Langworthy was entitled to the appellate review which he sought regarding his conviction of the crime of rape. The intermediate appellate court erred in refusing to consider the questions thereon presented in his brief. We remand so it may do so.[13]

We point out that in the event the conviction is set aside for reasons not precluding a retrial, a new trial may be had at which not only the issue of Langworthy's guilt or innocence

---

12. We are cognizant that Code (1957, 1972 Repl. Vol.) art. 59, §§ 27 and 28, contrary to § 25, refer to a finding of "not guilty by reason of insanity." Section 27 concerns the committal of a person found insane at the time of the commission of the act for examination and evaluation and § 28 provides for the conditional release of a person confined pursuant to § 27 and § 24 (with respect to incompetency to stand trial). We believe the reference to "not guilty by reason of insanity" is a holdover from common law concepts and prior statutory provisions regarding insanity and the commission of crimes. In light of the clear provisions of § 25, we do not consider §§ 27 and 28 as authorizing or calling for a verdict of "not guilty by reason of insanity."

We do not subscribe to the theory of the Court of Special Appeals that a finding that a defendant was insane at the time of the commission of the crime means that "[t]here is no crime." Langworthy v. State, 39 Md. App. 559, 561, 387 A. 2d 634 (1978). Its reasoning was that the finding of insanity establishes a lack of the *mens rea. Id.* We do not think that this is so in light of the conditions prescribed for a finding of insanity, namely "as a result of mental disorder, [a defendant] lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Code (1957, 1972 Repl. Vol.) art. 59, § 25 (a). Neither of these tests is necessarily at variance with a general intent to commit a crime. *See* Gardner v. State, 41 Md. App. 187, 396 A. 2d 303 (1979).

13. Of course, in the posture of the appeal before us, we have given no consideration whatsoever to the merits of Langworthy's contentions regarding his conviction of rape, leaving that to the Court of Special Appeals on remand.

We again note that the propriety of the order confining Langworthy for treatment upon the finding that he suffered from a mental disorder making him, if a free agent, a danger to himself or to the safety of the person or property of others was not before the Court of Special Appeals. Therefore, there is no need for us to reach the question whether an appeal would lie from that order to the Court of Special Appeals in view of the statutory provisions for release authorized by Code (1957, 1972 Repl. Vol.) art. 59, §§ 27 and 28. *See* Dorsey v. Solomon, 435 F. Supp. 725 (D. Md. 1977), *appeal docketed,* No. 78-1667 (4th Cir. Sept. 26, 1978).

of the substantive offense may be retried, but also the question of his insanity at the time of its commission may be redetermined.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court for further proceedings in accordance with this opinion; costs to be paid by Prince George's County.*