DAVID C. BASTIAN *v.* VALENTINA LAFFIN ET AL.

[No. 1155, September Term, 1982.]

*Decided May 18, 1983.*

The cause was argued before MOYLAN and ADKINS, JJ., and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals (retired), specially assigned.

*John Davis,* with whom was *John H. Harman* on the brief, for appellant.

*Elizabeth Tennery,* with whom were *Welsh & Tennery* on the brief, for appellees.

ADKINS, J., delivered the opinion of the Court.

Appellant David C. Bastian is before us for the third time in this case. It is the second appearance for appellees Valentina and Alfred Laffin. The events giving rise to the present phase of their dispute really began in December, 1976, but some earlier history, or perhaps genealogy, will assist in identifying the *dramatis personae* as well as in highlighting the issues we are now asked to decide.

John and Maria Laffin lived for some time in the Orient, and travelled throughout the world. In the course of their travels, they acquired various *objets d'art.* They had three children, appellees Valentina and Alfred, and another son, Edward.

Maria Laffin died in 1967 and John in 1971. Their son, Edward, a resident of Montgomery County, died in 1972, leaving his wife, Maj-Lis, and two sons, Edward Jr., and William. Maj-Lis died in December, 1976; her two sons survived her.

When Edward Laffin died, Maj-Lis qualified as executrix. The estate was represented by appellant Bastian. After the death of Maj-Lis, Bastian became successor personal representative of Edward's estate and personal representative of Maj-Lis's estate. Dr. and Mrs. Steven Soudakoff became guardians of Edward Jr., and William, who were apparently the principal beneficiaries under her will.

The *objets d'art* and other items of personal property about which the present case revolves were neither inventoried nor appraised in Edward Laffin's estate. They, or some of them, were inventoried and appraised in Maj-Lis's estate. Valentina and Alfred filed a claim in the latter estate, asserting that specified items of personalty belonged to

them, and asking that the items be returned to them and that Bastian be enjoined from disposing of them. Bastian rejected the claim on March 4, 1977, whereupon Valentina and Alfred sued him in the Circuit Court for Montgomery County, seeking essentially the same relief. In September, 1977, they also filed a petition in the Orphans' Court seeking Bastian's removal as successor personal representative of Edward's estate.

The three proceedings — the claim in Maj-Lis's estate, the petition in Edward's estate, and the separate equity action — were consolidated for trial. On September 29, 1978, the court denied all relief requested by the Laffins. This engendered the first appeal to this court.

In an unreported per curiam, *Laffin v. Bastian,* No. 1113, September Term, 1978 (May 11, 1979), *cert. den.* 285 Md. 727 (1979), we affirmed the court's refusal to remove Bastian as successor personal representative of Edward's estate on the ground that neither Valentina nor Alfred had standing to seek Bastian's removal.[1] We carefully declined to pass on the substantive merits of the removal petition. But we vacated the order to the extent that it denied Valentina and Edward's claim to the personalty. We held that "Appellants [Valentina and Alfred] are entitled to have the items in question returned to them." We remanded the case to the circuit court "for the entry of such further orders as may be necessary to achieve that result." *Laffin v. Bastian, supra,* slip opinion at 7.

On September 18, 1979, the circuit court ordered Bastian "to forthwith restore" the claimed personalty to Valentina and Alfred. Although Bastian turned over some jewelry promptly, he did not turn over the other property, much of which was then in the possession of the Soudakoffs, in Indiana, whence some of it was retrieved by Valentina and Alfred. On December 18, 1980, Valentina and Alfred filed a petition to compel compliance with the September 18, 1979,

---

1. We vacated the court's order refusing to remove Bastian as personal representative of Maj-Lis's estate because the Laffins had requested no such removal.

order, and for ancillary relief.[2] The ancillary relief requested included claims for monetary relief against Bastian for damaged items of the personalty, and for the value of lost items, and for attorney's fees and other expenses incurred by Valentina and Alfred in their efforts to locate and recover their property from 1977 to date.

On June 22, 1981, some six months and twenty-six docket entries later, a hearing on the petition was commenced. The hearing concluded on July 6. Almost a year after that, on June 23, 1982, the Circuit Court for Montgomery County filed a memorandum opinion and order. The court held that Bastian was liable for loss of and damage to the personalty in question under § 8-109 of the Estates and Trusts Article, because "Bastian failed to act in a prudent manner [in caring for the property] . . . and exposed [Valentina and Alfred] to extraordinary cost and exposure to the ultimate disappearance of their property." It found that Bastian had by his actions "caused [Valentina and Alfred] to hire counsel and expend considerable sums of money in an effort to conclude a case that was not particularly complicated." It entered judgment in favor of Valentina and Alfred and against Bastian in the amount of $24,210 by way of damages for the loss of and injury to the personalty, and in the amount of $30,000 for attorney's fees and costs under Md. Rule 604 b.

Bastian seeks reversal of the judgment below because, in his view,

1. The trial court was clearly erroneous in finding that Bastian's conduct caused the destruction and loss of or damage to Valentina and Alfred's property.

---

2. In the meantime, on December 17, 1979, the Circuit Court for Montgomery County *sua sponte* removed Bastian as personal representative of Maj-Lis's estate. By amended order, February 21, 1980, Bastian was removed as successor personal representative of Edward's estate. These orders produced the second appeal to this court. In an unreported per curiam, Bastian v. Feeney, No. 75, Sept. Term, 1980 (July 1, 1980) we reversed, this time because the removal had been accomplished without the hearing required by § 6-306 (c) of the Estates and Trusts Article. As in the first appeal, we ventured no opinion on the merits of the trial court's action.

2. The court's assessment of damages was clearly erroneous because based on inadmissible and insufficient evidence.

3. The court erred, as a matter of law, in awarding attorney fees and other costs to Valentina and Alfred.

*Bastian's Liability*

Section 8-109 of the Estates and Trusts Article provides, in pertinent part:

> (a) The individual liability of a personal representative to third parties arising from the administration of the estate is that of an agent for a disclosed principal, as distinguished from his fiduciary accountability to the estate.
>
> * * *
>
> (c) A personal representative is not individually liable for obligations arising from possession or control of property of the estate or for torts committed in the course of administration of the estate unless he is personally at fault.

A personal representative is required to "take possession or control of the estate of the decedent. . . ." Estates and Trusts Art. § 7-102. He has an obligation to protect and preserve the property so entrusted to him. A. Bagby, Maryland Law of Executors and Administrators § 134 (1927). In carrying out that obligation, he is required to act in good faith, and must perform his fiduciary duties with the same degree of care and diligence that would be exercised by a prudent person under similar circumstances in the management of his own affairs. *Goldsborough v. DeWitt,* 171 Md. 225, 189 A. 226 (1937).

The claim that Bastian breached his fiduciary duty, and thus was "personally at fault" for the losses sustained by Valentina and Alfred, is largely based on Bastian's selection and retention of Sligo Moving and Storage Company as a repository for property which he possessed as personal representative of the Maj-Lis Laffin estate.

Bastian selected Sligo and caused personalty from Maj-Lis's home — including the property later awarded to Valentina and Alfred, and other items concededly not belonging to the estate, but rather to Edward and Maj-Lis's sons — to be transported to Sligo's warehouse in Prince George's County. He selected Sligo because he wanted a company that "could move swiftly and at a relatively short notice", although his efforts to see if other storage companies might be available were minimal at best. He claimed he knew Mr. Roberts, the proprietor of Sligo (although Roberts denied this), and that he had had prior dealings with Sligo. He claimed that he received assurances that the warehouse was bonded, with a high security storage area and protection by a burglar alarm system. These representations, if made, turned out to be false. In any event, Bastian never inspected the warehouse facilities before placing the property there. And he never insured the property, although warned by Sligo that it was his responsibility to do so. *See* Md. Code, Art. 56, § 176A.

There was evidence to support a finding that when the property was removed from Maj-Lis's home in early 1977, it was in good condition. While there was also some evidence to the contrary, the trial court was entitled to resolve the conflict against Bastian. But there is no dispute that when an inspection of the warehouse was finally made, conditions there were, to put it mildly, deplorable.

The conditions were discovered by Dr. Soudakoff, the guardian of Edward, Jr., and William Laffin. He went there on May 10, 1978, to retrieve some things that belonged to his wards. He discovered that their property had been commingled with estate property, as well as finding extensive evidence of improper storage, lack of security, and damaged goods. He communicated his findings to Bastian by letter on May 15. Bastian finally visited the warehouse on May 30 or thereabouts and confirmed that the conditions were as described by Dr. Soudakoff.

In the interim, there had been intimations that all was not well at Sligo. As early as March, 1977, Bastian learned that

Roberts, the proprietor of Sligo, had been evading process. There were indications that Roberts was having financial problems. Roberts was reluctant to permit Bastian to enter the warehouse. Nevertheless, despite the straws in the wind, and despite the actual knowledge Bastian gained in May, Bastian did virtually nothing. After his own visit to the warehouse, he communicated with Roberts, who was becoming increasingly difficult to locate. He asked that conditions be improved. He sought information from the Prince George's County police as to "robbery" problems at the warehouse. He filed suit against Roberts at the end of September, 1978. But the property was allowed to remain in the warehouse until October 9, when it was finally shipped to the Soudakoffs in Indiana. And that action was only taken, it seems, because Roberts had advised Bastian that Sligo would be evicted by October 20, so that all property would have to be removed from the warehouse.

Bastian argues that he was not negligent in his initial selection of Sligo, and that he cannot be charged for conditions in the warehouse after he had learned of the circumstances there, because by that time (the end of May 1978) the damage to or loss of Valentina's and Alfred's property had already occurred. As to the first point, we do not question that a personal representative may, within limits, delegate authority to an agent; *see Mobley v. Mobley,* 149 Md. 401, 131 A. 770 (1926). But he must use reasonable diligence in selecting the agent and in supervising the agent's conduct. *United States v. Romitti,* 363 F.2d 662 (1966); 3 *C.J.S.* Agency § 423 nn. 3 & 4 and accompanying text; *Restatement of Agency 2d* § 213. *Compare Athas v. Hill,* 54 Md. App. 293, 458 A.2d 859 (1983); *Bogley v. Middleton Tavern,* 42 Md. App. 314, 400 A.2d 15 (1979), *rev'd. on other grounds,* 288 Md. 645, 421 A.2d 571 (1980).

As to the second point, it is by no means clear that all of the loss and damage had occurred by the end of May, 1978. For example, Bastian himself admitted that in October of that year, a Chinese rug was in the warehouse. This was one of the items never recovered by Valentina and Alfred.

And as to certain jewelry that was retained by Bastian, and never placed in the warehouse, Bastian simply offered no explanation to rebut the evidence that some of it (natural or cultured pearl necklaces) was never delivered by him; what the Laffins finally received was a paste pearl necklace and a necklace of a different type than that initially appraised.

We hold that there was evidence to support the trial court's conclusions that Bastian "chose the warehouseman without making proper inquiry", that "the damaged condition in which many items were found was not the condition in which they had been when the court appraiser examined them" before Bastian placed them in storage, and that "Mr. Bastian failed to act in a prudent manner and that he exposed [Valentina and Alfred] to extraordinary cost and exposure to the ultimate disappearance of their property." In light of the record as a whole, we cannot say that these conclusions were clearly erroneous.

## Evidence of Damages to Property Injured or Lost

The trial court entered judgment against Bastian and in favor of Valentina and Alfred in the amount of $24,210 because of damage to or loss of their property. Bastian claims this was erroneous, because based on inadmissible evidence, specifically the deposition of I. M. Chait and the testimony of Valentina Laffin.

Chait's deposition was taken in California on March 20, 1981, and was admitted into evidence over Bastian's objections. The deposition discloses that Chait was a highly-qualified appraiser of Oriental *objets d'art,* and it was as an expert on the value of items of this kind that his deposition was offered.

When the Laffins offered the deposition, Bastian raised a question as to the weight of the evidence it contained, but as to its admissibility, his counsel said he relied on the objections made at the time the deposition was taken. Having expressed only those grounds of objection, he waived any other grounds. *Von Lusch v. State,* 279 Md. 255, 368 A.2d

468 (1977). Three objections were noted when the deposition was taken. The first and third were neither briefed nor argued on this appeal; we consider them as abandoned. *Federal Land Bank of Baltimore, Inc. v. Esham,* 43 Md. App. 446, 406 A.2d 928 (1979); *Jacober v. High Hill Realty, Inc.,* 22 Md. App. 115, 321 A.2d 838 (1974). The second was:

> Mr. Chait, the appraiser, is not qualified to testify as to the values of the alleged missing or damaged property at the relative times because he has not viewed those items.

The thrust of this objection was clearly that Chait could not testify to the value of items he had not seen, since he would lack the knowledge of their condition required as the basis for an expert opinion as to value. *See Kruvant v. Dickerman,* 18 Md. App. 1, 305 A.2d 227 (1973). But we do not find this argument persuasive.

As Chait's deposition makes clear, he had in fact seen many of the items in question. As to other items, which were missing, he based his appraisal on similar items which were present or on descriptions furnished by Valentina Laffin. Valentina also described those items at the trial, and no question was raised as to the accuracy of her descriptions. A number of them were also described in the appraisal filed in Maj-Lis Laffin's estate, which appraisal was also in evidence. It is true that an expert's opinion is without probative force if it is clear that there was no rational basis for the opinion. *Mangione v. Snead,* 173 Md. 33, 195 A. 329 (1937). Despite Bastian's contention to the contrary, it is not necessarily true that an expert must have direct personal knowledge of an item in order to express an opinion as to its value. For example, in *Bresnan v. Weaver,* 151 Md. 375, 135 A. 584 (1927) an insurance adjuster was permitted to testify to the reasonableness of values of items destroyed in a fire. He had never seen the items. His testimony was based on a memorandum of the items prepared by an owner of them. The late Judge Adkins, writing for the court, held that this expert testimony was proper because it "was in the nature of an

answer to a hypothetical question," the factual predicate for which was adequately shown. *Id.* at 380, 135 A. at 586. We think the admission of the deposition was not an abuse of the court's discretion. As we said in *Thomassen Lincoln-Mercury, Inc. v. Goldbaum,* 45 Md. App. 297, 305, 413 A.2d 218, 223 (1980): "Appellant's complaints about the manner in which [the expert] derived and stated his opinion as to value go to the weight to be accorded his testimony rather than to its admissibility."

As to Valentina Laffin's testimony, the portion now objected to is her evidence as to values, as summarized in the Laffins' trial exhibit no. 58. This exhibit is a list of the items of property in question, and includes, *inter alia,* values assigned those items by Valentina. Her testimony as to values, and the summarizing exhibit, were offered on the basis of the well-established rule that an owner of property may ordinarily testify as to its value. *Bailey v. Ford,* 151 Md. 664, 135 A. 835 (1927); *Bresnan v. Weaver, supra, Barber v. State,* 23 Md. App. 655, 329 A.2d 760 (1974). Bastian argued below, however, as he does here that this presumption is based on the notion that an owner is thoroughly familiar with her own property. He claims that this basis for the admission of Valentina's testimony does not exist in this case, because (as counsel said in the trial court) "I don't believe these goods had been in Valentina Laffin's possession or use and the incidence [sic] of ownership for many, many years."

Bastian is correct in asserting that the rule regarding the admissibility of an owner's testimony of property values is not without limitations. The owner's competence to testify derives not from title "but rather [from] the fact that ordinarily an owner knows the property intimately and is familiar with its value." *Cofflin v. State,* 230 Md. 139, 143, 186 A.2d 216, 219 (1962). In *Cofflin,* a court-appointed committee was asked to testify as to the value of certain of her ward's property. In point of fact, the witness disclaimed knowledge of value. The Court of Appeals said "if it is demonstrated that the owner possesses no knowledge whatever

of the market price and condition of the article in question, his testimony may be inadmissible." *Id. See also Smith v. Potomac Electric Power Co.,* 236 Md. 51, 202 A.2d 604 (1964) (corporate officers, directors, and shareholders do not qualify under the owner-testimony rule).

The facts presented here are far different from those before the Court of Appeals in *Cofflin.* Valentina was familiar with some of the items because they were in her parents' home from 1940-1967. She visited there during this period and lived with her parents from 1965-1974. She brought the property to Maryland in 1967. She saw the items in 1972, and again in 1978. Her testimony demonstrates both familiarity with the property and with its value, and in many instances is substantiated, as to value, by Chait's deposition. We do not think the trial court abused its discretion in admitting her testimony. It was for it to give the evidence whatever weight might be appropriate. *Bresnan v. Weaver, supra.*

There remains a final problem as to damages — one somewhat more troubling than the issues we have addressed. The measure of damages for tortious injury to personal property is the lesser of the difference between the value of the property immediately before the harm has been done and its value immediately thereafter or the reasonable cost of repairs. *Kruvant v. Dickerson, supra.* If the property has been destroyed or converted, the measure of damages is its value at the time of the destruction or conversion. *Bailey v. Ford, supra. Checkpoint Foreign Car Service, Inc. v. Sweeney,* 250 Md. 251, 242 A.2d 148 (1968). Bastian contends that the evidence in this case fails to show appropriate values as of appropriate times, and thus was inadmissible.

The admissibility argument is disposed of by the fact that Bastian never objected to any of the testimony on these grounds. His objections were those we have discussed above. Objectionable testimony which is admitted without proper objection may be considered for whatever probative value it may have. *Todd v. Ferrell,* 212 Md. 574, 130 A.2d 581 (1957);

and *see Hahn v. Suburban Hospital Association, Inc.,* 54 Md. App. 685, 461 A.2d 7 (1983), and 30 Am. Jur. 2d *Evidence* § 1089 (1967). The question thus becomes what probative value the admitted evidence had. If it provided only a speculative basis for the trial court's award, the evidence would be insufficient to sustain the judgment. For example, if a car is totally destroyed in an accident, and at trial the owner proves the value of a car of a totally different make and model, without objection, that evidence is admissible but it has no probative value in the case.

"It is the general rule that one may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural and direct result of the injury." *Empire Realty Co., Inc. v. Fleisher,* 269 Md. 278, 284, 305 A.2d 144 (1973). But *Empire* also teaches us that the highest requirement of certainty attaches to the liability aspect of damages. Of that, we have no doubt on the facts of this case. A somewhat more flexible approach may be applied to the measure of damages. *Compare Della Ratta, Inc. v. American Better Community Developers, Inc.,* 38 Md. App. 119, 380 A.2d 627 (1977). Some modifications have been developed to mitigate "the harsh requirements of the 'certainty' rule. . . ." *M & R Contractors and Builders, Inc. v. Michael,* 215 Md. 340, 348, 138 A.2d 350, 355 (1958). These include:

> (a) [I]f the fact of damage is proven with certainty [as it was here], the extent or the amount thereof may be left to reasonable inference; (b) where a defendant's wrong has caused the difficulty of proving damages, he cannot complain of the resulting uncertainty;[3] (c) mere difficulty in ascertaining the amount of damage is not fatal; (d) mathematical precision in fixing the exact amount

---

**3.** See also Hubler Rentals, Inc. v. Roadway Express, Inc., 459 F. Supp. 564, 595 (D. Md. 1978), aff'd in part and rev'd in part, 637 F.2d 257 (4th Cir. 1981).

> is not required; (e) it is sufficient if the best evidence of the damage which is available is produced. . . . Id.

While *M & R Builders* was a case involving lost profits, we do not see why these precepts should not also apply to the case at bar.

In this case, as in *Empire Realty, supra,* the trial court's "itemization [of damages] might have been explained in greater detail." 269 Md. at 282, 305 A.2d at 146. But a careful review of the record reveals the following:

Chait's deposition contains evidence of the difference between the before and after fair value of many of the damaged items, as well as evidence of the values of some of the missing items. These values were given as of 1980, whereas the damage to the goods apparently occurred between early 1977 and October 1978. But any uncertainty arising from the date differentials or from inability to tell precisely when damage or loss occurred cannot be complained of by Bastian, because his taking possession of the goods and retaining possession of them until ordered by the court in September, 1979, to turn them over to the Laffins was largely the cause of those problems. Even at the time of the 1979 court order, the property was in the hands of the Soudakoffs in Indiana, and not in actual possession of the Laffins.[4]

Valentina, through her testimony and exhibit no. 58,[5] produced evidence of the repair cost as to certain items. (No objection was noted as to the reasonableness of these costs.) We note that if an owner of a damaged chattel produces evidence of either the before damage-after damage differential, or the cost of repairs, the burden is on her opponent to show that the owner has selected the more expensive option. *Kruvant v. Dickerman, supra,* 18 Md. App. at 4, 305 A.2d at 231. No such evidence was produced by Bastian.

4. The Laffins agree, however, that whatever damage or loss occurred happened before Bastian shipped the property to Indiana.

5. Exhibit no. 58 was a list of the property in question and showed various valuation figures, including those of Valentina.

Indeed, he produced no evidence whatsoever to contradict any of the value evidence submitted by the Laffins.

Valentina also produced evidence as to the value of certain missing items, and other value evidence as to damaged items, without specification as to the basis for the value figures, or as to the date of valuation. Once again, we think Bastian cannot complain about the time factor; he caused it. He did not choose to put on contrary evidence, nor did he attempt to prove (other than by cross-examination) that California values (if those were what Chait was using) were higher or lower than East Coast values.

If we take Chait's before/after differentials when they are less than Valentina's repair costs (or when there is no evidence of repair costs), if we apply Valentina's repair costs where they are less than Chait's before/after differences, if we use the lower of Chait's and Valentina's figures as to missing items, and if we then apply Valentina's unspecific (as to basis and date) values as to other items, we find a total figure of almost $29,000. Excluding Valentina's unspecific values from the calculation produces a figure of some $26,285. We think the trial court had before it sufficient evidence to support its award of $24,210 after giving due weight to all of that evidence and to other evidence such as the Montgomery County appraisal and the testimony of Chief Appraiser Jane West. *See Masano v. Albritten,* 245 Md. 423, 226 A.2d 299 (1967).

*Attorneys' Fees and Other Costs Under Rule 604 b*

The trial court also entered judgment against Bastian and in favor of Valentina and Alfred in the amount of $30,000 for attorneys' fees and costs. The amount of the judgment was based on evidence that the Laffins had expended $33,523.56 for attorneys' fees, private detectives, and other matters in their efforts to locate and recover their property from 1977 to date.

Bastian's objection to this award is narrow. It is not based on the reasonableness of the expenditures, (no objection was made below on this ground) or the correctness of the trial

court's conclusion that Bastian over several years of litigation had engaged in obstructionist and delaying tactics, demonstrating an attitude that "was not one of a fiduciary, but bordered on the verge of being obstreperous." It is restricted solely to the argument that as a matter of law, the trial court lacked legal authority to award attorneys' fees and other costs. We limit our review to that argument. *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979); Md. Rule 1031 c 2 and 5.

First, Bastian asserts that as a general rule, expenses of litigation (other than usual court costs) and legal fees incurred by a successful litigant are not recoverable in an action for damages, *Archway Motors, Inc. v. Herman,* 41 Md. App. 40, 394 A.2d 1228 (1978), unless provided for contractually, *Addressograph-Multigraph Corp. v. Zink,* 273 Md. 277, 329 A.2d 28 (1974), or authorized by statute. The problem with this contention is that the trial court did not base its award on any notion of generally recoverable damages, contracts, or statute. It relied upon Md. Rule 604 b, which provides:

> In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay the court shall require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorneys' fees.

It is Bastian's view that this rule permits an award only against a party who has *brought* a proceeding "(1) in bad faith, (2) without substantial justification, or (3) for purposes of delay" and not against one who defends against proceedings brought by another and in so defending, comes within one or more of the three kinds of activity condemned by the rule. He cites *Singer v. Steven Kokes, Inc.,* 39 Md. App. 180, 384 A.2d 463 (1978); *Colonial Carpets Inc. v. Carpet Fair, Inc.,* 36 Md. App. 583, 374 A.2d 419 (1977); and

*Hess v. Chalmers,* 33 Md. App. 541, 365 A.2d 294 (1976); to which we add *Shanks v. Williams* and *Shanks v. Trustees, Manchester Baptist Church,* 53 Md. App. 670, 455 A.2d 450 (1983).

In each of those cases, the issue before us was whether the sanctions of Md. Rule 604 b should be applied against a plaintiff. We found an insufficient basis for doing so in *Hess.* In *Colonial Carpets* we remanded to permit the trial court to determine whether a factual basis for a 604 b award against a plaintiff existed. In *Singer* and *Shanks* we affirmed awards against plaintiffs. But in none of these cases did we hold that attorneys' fees and other expenses could not be awarded against an offending defendant.

Indeed, the language of the rule precludes such a construction. The rule does not speak in terms of an action *brought* in bad faith, without justification, or for delay, or of an award against a plaintiff and in favor of a defendant. Its language encompasses "any proceeding had" in violation of its strictures, and provides for an award in favor of the "moving party" and against the "adverse party". Plainly, the rule is intended to compensate a defendant as well as a plaintiff for the consequences of the defined types of improper conduct by an opponent; there is no reason why the rule should not apply to both parties to an action.

That, indeed, is precisely the way the Court of Appeals construed the rule in *Attorney Grievance Commission v. A. S. Abell Co.,* 294 Md. 680, 689-90, 452 A.2d 656, 660 (1982). There, the court held that a trial judge had not abused his discretion in awarding attorneys' fees against the Attorney Grievance Commission, which had raised a venue issue without substantial justification, in an action brought against it by A. S. Abell Co.

We think *Attorney Grievance Commission* is dispositive of the narrow issue raised by Bastian. The trial court had authority to make an award against him pursuant to Rule 604 b.

In so holding, we do not mean to suggest that Rule 604 b may be invoked whenever a party defends an action on

grounds that turn out to be unsuccessful. Since Bastian, both below and here, questioned only the court's legal authority to apply the rule against a defendant, whether his conduct in this case was such as to come within the rule, is not before us. Md. Rule 1085. We also recognize that not all expenses incurred by a party in prosecuting a claim may be allowable under the rule, and that expenses incurred *de hors* the litigation itself may not be recoverable. But those issues, like the reasonableness of the amounts involved, are also not before us. Md. Rule 1085. Since no issue is raised as to the evidence upon which the award was based, or as to abuse of discretion in making the award, we affirm it.

*Judgment affirmed.*
*Appellant to pay the costs.*